Pages 1 - 73

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

LAM RESEARCH CORPORATION,          )
                                   )
          Plaintiff,               )
                                   ) NO. C 03-01335 EMC
   vs.                             )
                                   )
SCHUNK SEMICONDUCTOR and           )
XYCARB CERAMICS,                   )
                                   ) San Francisco, California
          Defendants.              ) Monday, February 24, 2014
                                   ) 2:47 p.m.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**      Carr & Ferrell, LLP
                        120 Constitution Drive
                        Menlo Park, CA  94025
                        (650) 812-3400
                        (650) 812-3444 (fax)
                    BY: **STUART C. CLARK**
                        **GERALD P. DODSON**
                        **BRYAN J. BOYLE**

**For Plaintiff:**      Lam Research Corporation
                        4650 Cushing Parkway
                        Fremont, CA  94538
                        (510) 572-4455
                        (815) 346-5296 (fax)
                    BY: **ERIC B. JANOFSKY**

**For Defendant:**      Shaub & Williams LLP
                        Wilshire-Bundy Plaza
                        12121 Wilshire Boulevard, Suite 205
                        Los Angeles, CA  90025
                        (310) 826-6678
                        (310) 826-8042
                    BY: **LISBETH BOSSHART MERRILL**
                        **DAVID R. SHAUB**
                        **CASSANDRA M. TAM**

Reported By:        Lydia Zinn, CSR No. 9223, Official Reporter

**THE COURT:** Please be seated. Calling Case C. 03-1335, *Lam Research versus Schunk Semiconductor*. Counsel, please come to the podium and state your name for the record.

**MR. CLARK:** Good afternoon, Your Honor. Stuart Clark, appearing for Lam Research. And with me are my colleagues Gerry Dodson and Bryan Boyle, and Eric Janofsky, in-house counsel for Lam.

**THE COURT:** All right. Thank you, Mr. Clark.

**MR. SHAUB:** Good afternoon, Your Honor. David Shaub, appearing for the defendant, Xycarb. And today we have with us Cassandra Tam, one of the attorneys in our firm; Lisbeth Merril, another attorney in our firm; as well as Harro de Cocq, who is an executive of our client, Xycarb.

**THE COURT:** All right. Thank you. Welcome, everyone. We've got several motions on. And let me just tell you where I'm at on the first two, because I want to get to claim construction directly. The core of this: I'm going to deny Xycarb's motion for intervening rights. I think the two patents are substantially identical, and I don't think there's been enough of a substantive change to warrant granting the motion.

With respect to Xycarb motion for reconsideration, I am going to grant that, because I do think that there are very substantial questions raised. And in looking at Judge Breyer's second ruling, I have serious questions about that. So I want

to get to claim construction.

**MR. SHAUB:** Thank you.

**THE COURT:** All right. And obviously the focus, in large part, is on the term "bond," but before we get there, let me ask about the term "bonding layer."

What -- other than the illustrative examples of bonding by metal, such as soldering, brazing, or use of an adhesive, how else can something -- the support ring be bound -- bonded by using a -- a bonding layer to the face of the plate, other than through a conventional clamping mechanism, like a screw or bolt or something? Are there other means of bonding?

**MR. SHAUB:** Yes.

**THE COURT:** Well, what are some other examples?

**MR. SHAUB:** In the patent specification, they describe brazing, and they also describe adhesives.

Now, brazing causes a melting of materials. And the -- and the melted materials can join two parts.

**THE COURT:** Right.

**MR. SHAUB:** And in addition, adhesives such as an epoxy are, in the simplest terms, a glue.

**THE COURT:** Yeah.

**MR. SHAUB:** And that can attach the parts together and bond them.

**THE COURT:** Right. And that's -- as I said, other than those methods of melting metal, such as brazing or

soldering on the one hand, and using adhesive like an epoxy on the other, is there another way to achieve bonding, without --

Well, I guess one question:  Is the bonding layer -- I believe that Lam, I think in his reply brief, indicated that it would not object to the importation of the adjective "ductile," if the Court were to accept its construction.

That's what I read in your reply brief.  Correct?

**MR. CLARK:**  Your Honor, my apologies.  I was looking at this document, and I didn't get your question.

**THE COURT:**  Oh, okay.  It sounded like -- I think it was in your reply brief you advocate a particular construction of "bonding layer":  A layer that allows for or assists in the bonding, as defined in Term 8.  And you would not object to adding the word "ductile"?

**MR. CLARK:**  Yes.  If you're describing something that requires a bonding layer; for example, soldering or brazing or adhesive.

**THE COURT:**  And so even brazing or soldering is considered ductile, because there's some -- some give?

**MR. CLARK:**  Yeah.  Yes, Your Honor.  As I understand ductility, it's the give in the bonding substance or the bonding material, whatever that is.

**THE COURT:**  All right.  Is there any dispute about that?

**MR. SHAUB:**  Yes, Your Honor.  The ductile -- ductile

is a preferred embodiment, but it's not the only embodiment.

I think it's -- it's possible -- in fact, the specification actually indicates that you can have a bond made, let's say, through brazing, where you -- depends on the material you're using, but if you're using some type of metal, once it -- once it hardens, then there really isn't the kind of ductility that they're talking about.

And that's explained in the patent specification; that, as a consequence of the joinder of the two parts together, using their technique, that you can run into problems with regard to fracturing. As a consequence, the ductility type of material to be used is a preferred embodiment, because that can help to avoid that particular problem.

THE COURT: Yeah, but what I'm asking is: In your view, what's an example of a nonductile bonding layer?

MR. SHAUB: I think that Cassandra Tam, who's an attorney with us, can answer that question.

THE COURT: All right.

MS. TAM: Hi, Your Honor. I just wanted to clarify some points. You had mentioned -- you'd asked whether or not the patent contemplates any other types of bonding besides metallurgical and adhesive. And I think it might just be helpful to just to understand that, under Lam's current construction of "bonded," according to the patent specification, it actually can include fastening, because,

according to our motion papers, it includes the bonding

characteristics as well as the thermal characteristics directly

in the patent, itself.  So fastening could encompass could be

encompassed by "bonded."

However, due to the reissue proceedings, the Examiner did

see that wide, broadened scope of "bonded," and said, "I'm

going to reject all of your claims, because I believe that it

encompasses bolting, and fastening, and clamping.  And because

of the prior art, Takao, I'm going to reject this, because it's

anticipated by Takao, which teaches clamping."

And what happened is Lam went to the Examiner and said,

"No, no, no, no.  'Bonded' is different in our patent than the

term 'attached.'"  And we briefed that very thoroughly in our

papers.

The reason why it's so important to understand the way Lam

uses "bonded" in the patent, versus "attached," is because in

the appeal brief, itself, it goes in very detail about -- that

"attached," "mounting," "secured" means something differently.

It means mechanically attaching via bolting or fasteners.  And

that's appeal brief, page 22.  Whereas -- and they distinctly

distinguish "bonded" as used in the conventional sense to

describe "a joint between two surfaces, thus excludes unbonded

surfaces clamped together with the mechanical structure."

So Lam wanted to overcome Takao by making this disclaimer.

And the Appeal Board -- eventually down the line, the Appeal

Board accepted Lam's disclaimer, and said that -- that clamping action would not be covered under the reference of "bonded."

And when Lam, in its appeal brief, distinguished "attachment" versus "bonded," if you look on page 22 through 24, it actually makes repeated references in bold of "bonded," versus "bonding layer," to describe Claims 32 and 33, which Lam now says is the essence of shrink fit.  So it's distinguishing "bonded" specifically in those claims to refer to metallurgical adhesive bonding; whereas "attached" is, you know, fasteners, and bolting, and other such clamping actions.

So now, you know, that we're at this point, given light of the reissue proceedings, we now know that the broad definition of "bonded" does not include fastening, bolting, clamping, or, as the Appeal Board said, "clamping actions."

THE COURT:  All right, but I have a different question, which is:  Where do you draw -- what's the difference between a ductile and a nonductile bonding layer?  What is an example of both?  Of either?

MS. TAM:  Well, according to the patent, a ductile bonding layer would be an epoxy or something that's able to --

(Discussion off the record.)

MS. TAM:  Yeah.  We don't know an example of a nonductile; but according to the patent, when -- whenever there is any thermal mismatch, then you need a ductile bonding layer. So according to Claim 33, which describes a thermal mismatch,

you need a ductile bonding layer.  And so that's why we --

THE COURT:  So is soldering a ductile bonding layer?

MS. TAM:  Yes.  It would include --

THE COURT:  Brazing would, too?

MS. MERRILL:  Actually, indium is.  Yes.

MS. TAM:  Yeah.  Indium.  Indium is one of the examples that they provide that would you have a ductile bonding layer.

THE COURT:  And that is a brazing material:  indium?

MS. TAM:  Yes.

THE COURT:  Because if there's some give, even when they -- when that material is melted onto the two surfaces?

MS. TAM:  Yes.  And the reason why it's important to have that give is because they want to prevent breaking or fracturing.

THE COURT:  Yeah.  No.  I understand.

MS. TAM:  Yeah.

THE COURT:  There's some flexibility, so it doesn't -- to allow a little bit of give.

MS. TAM:  Exactly.

THE COURT:  So in your view, there's -- you can't come up with a nonductile bonding layer?  Everything has some ductility to it?

MS. TAM:  Yeah.  According to the '266 patent.

MS. MERRILL:  Yeah.  I apologize, Your Honor.  We've

split this up so that certain of us are more familiar with certain aspects of it, and I tend to be a little bit more familiar with the technology.

I think the point to keep in mind:  It's the indium bond that brazing, which is at the heat --

(Reporter requests clarification.)

MS. MERRILL:  The indium bond, which is brazing.  So that's at a higher level than soldering.  That has a ductile bonding layer.

However, the -- because of the curing that takes place with the adhesive, it's not ductile.  And you can see in the --

THE COURT:  Well, what did you say?

MS. MERRILL:  The adhesive epoxy --

THE COURT:  Yes.

MS. MERRILL:  -- gets cured at a high level, and then it's no longer ductile.  Okay?

And then the same is true for welding.  It's not ductile. And that's why we have the problems that were cited.

And we have a slide that could help with that, but we have in the '577 patent that belongs to Lam, as well, they talk about these problems with the '456 patent, where the bond, because it's not ductile, begins to break.  And -- and --

THE COURT:  So an example of nonductile is epoxy as it cools down?  As it's cured?  Once it's cured?

MS. MERRILL:  Yes, exactly.  And the -- the soldering

is nonductile.

But indium bond -- indium, which is used for brazing -- that is ductile.  Right?

THE COURT:  You have different view on that?

MR. CLARK:  Your Honor, I'm -- Dr. Glew is sitting in the back of the court.  He could probably tell the Court exactly what the answer is to this; but as I understand it, ductility is a relative term.  And it -- you measure ductility in relation to something which is less ductile and more ductile.

So we agree that soldering is more ductile than the components; at least the -- the support ring.  You may have ductility imparted by solder.

But Your Honor, ductility is not something that's claimed in any of the claims.  It's certainly discussed in the -- in the specifications as one of the advantages of some of the bonding methods, but it's -- as I say, it's not claimed.  And therefore, frankly, we haven't focused on ductility.  And that's why I haven't presented any evidence with regard to ductility to you.

THE COURT:  All right.  Well, let me ask a slightly different question, then.  Can you have something bonded to the back face of a plate, as Claim 1 requires, without using a bonding layer?

MR. CLARK:  Absolutely, Your Honor.

**THE COURT:** How?

**MR. CLARK:** Claim 33:  Shrink fitting.

**MS. MERRILL:** And we respectfully disagree.  And we can show the Court why.

**THE COURT:** Well, let me ask you.  I said "bonding to the face."  Now, the face, as I understand it, if you had a disk, would be the flat side; not the edge; not the rim.

**MR. CLARK:** Yes, but are you talking about the upper side; the side that is away from --

**THE COURT:** Well, yeah.  That's the back of the plate, as described in Claim 1; is it not?

**MR. CLARK:** Yes.  So are you talking about the back of the plate, Your Honor?

**THE COURT:** Well, it says "back face of the plate."

**MR. CLARK:** Yes.  Okay.  I'm with you.

**THE COURT:** So I guess this is more fundamental question.  Shrink fit -- at least, in the embodiment that Xycarb uses, the pressure is applied at the very edge of the plate; not to the face of the plate; but the edge of the plate, because that's where the action -- the pressure is applied as it shrink fits?

**MR. CLARK:** Yes.  Your Honor, I think the claim, Claim 18, talks about it being bonded about the periphery of the face.

**THE COURT:** Okay.  I'm -- I'm not -- I'm on Claim 1.

**MR. CLARK:**  Yeah.

**THE COURT:**  Okay?  To be blunt, I don't see how Claim 1 covers shrink fit, even as it's described, because it requires a material bonded to the back face of the plate.  And when you compress, through shrink fitting, the compression occurs at the very edge.  I wish we had it.  I'm looking at a sample.

**MS. TAM:**  Yeah.  We actually have it.  We have the sample.

**THE COURT:**  Can I have a plate?

**MS. TAM:**  Yeah.

(Whereupon a document was tendered to the Court.)

**THE COURT:**  Okay.  So this is Lam's version. Correct?

**MS. MERRILL:**  Yes.

**THE COURT:**  And the face of the plate is -- is the side of the disk.  It's not the edge; the perimeter; the very edge, which is about a quarter inch thick.  Correct?

**MR. CLARK:**  Correct, Your Honor.

**THE COURT:**  So how do you bond -- how do you have a conductive material bonded to the back face of the plate, when, as I understand, sort of, the -- I don't know if you want to call it the "clamping action" or the "pressure" that's exerted when you have shrink fit which goes on the outside of the perimeter; the edge.  That's the point that holds it in place.

That's where the bond occurs.  Correct?

MR. CLARK:  It -- well, it can occur either place, Your Honor.  It has to be around the perimeter.  And it can be --

THE COURT:  Let's be precise.  I'm talking about the edge; the quarter-inch-thick edge.  That's where.  That's what holds the plate in place, in Xycarb's --

MR. CLARK:  Well, it depends.  It depends what type.  There are various types of shrink fitting.  If you do it -- if you put a ridge and a groove, if you put a groove in the plate, and a ridge in the support ring --

THE COURT:  Yeah.

MR. CLARK:  -- which is what Xycarb does --

THE COURT:  Yeah.

MR. CLARK:  -- then you accomplish the shrink fit, by having all of the material away from the edge, if I can put it that way.  Just --

THE COURT:  So you're saying it still bonds to the face, because that ridge is still on the face?

MR. CLARK:  Correct, but also, Your Honor, Figure 1 of the patent contemplates bonding around the edge; but it's still around the periphery of the face; but it's around the edge, rather than being attached to the plate, itself.

MS. MERRILL:  So just -- may I respond to the statement; just the one statement about Xycarb's assembly?

It's not bonded.  It doesn't join on the face.  It -- the forces come from the side.  It just happens to be within a groove, instead of the outer side.

THE COURT:  Well, it comes from a groove or ridge.

MS. MERRILL:  Well, no, it doesn't come from a ridge.  It's a groove.

THE COURT:  It's a groove.

And then the collar -- the ring has the -- the ridge?  Which has the ridge?

MS. MERRILL:  The ring.  Would you like to see it?

THE COURT:  Yeah.  No.  I remember what it is.

MS. MERRILL:  Okay.

THE COURT:  So cut into the face of the plate is a groove.  Right?

MS. MERRILL:  Yes.  There's a groove cut through the face.  And then the -- the pressure that's exerted by the shrink-fitting action --

THE COURT:  -- is on the side of the groove?

MS. MERRILL:  -- ends up being on the side.

THE COURT:  Not on the face.

You would argue:  Not on the face of the plate, but in the groove?

MS. MERRILL:  Right.  And another note on that:  It's -- so it's the surface -- the side that's parallel to the side that you were referring to earlier.

But also, we see -- our construction asks for the face of the plate to be the flat face of the plate.  And so the shrink fitting doesn't occur.  It curves on a flat face, if you're going to argue that that side is some sort of face, because that is a -- there's a curvature.  So there's nothing on the flat face of the plate, and -- and certainly not in the top face.

THE COURT:  So I guess that's my question.  If you read the Claim 1 -- "bonded to a back face of the plate" -- I assume the face of a plate is the surface of the disk?

MR. CLARK:  Yes, Your Honor.  Now, of course, that -- that similar language is found in Claim 18, which is a claim that we do assert.  We don't assert Claims 1 through 17.

But -- but nevertheless, the principle is the same, your Honor, that the -- the interaction between the support ring and the electrode plate -- all it has to be is around the perimeter of the face.

So the perimeter of the face can be both on the face, itself, at or near the perimeter; or it can be at the edge, which is still on the perimeter of the face.  And that's Figure 1 of the patent.

Or alternatively, it can be attached to the -- on the face of the plate, itself, near the perimeter, which is Xycarb; the Xycarb electrode.

THE COURT:  Well, tell me how -- I'm looking at

Figure 1.  And it seems to me that's your model.  I mean, isn't that what I'm holding in my hand?

MR. CLARK:  No, Your Honor.  I think Figure 4 is more like -- is the model; or Figure 2A and 4, I think.

And that's --

THE COURT:  Yes.

MR. CLARK:  That shows bonding using a bonding layer.  We don't we don't disagree with that.

THE COURT:  Yeah.  And it's bonding to the face of the disk.

MR. CLARK:  Correct.

THE COURT:  Right.

MR. CLARK:  And now if you were to take Figure 2A, and put a groove and a ridge in that, then the forces would -- as the support ring contracts, the force would be against the groove and against the --

THE COURT:  That's right.  It's against the groove.  So the groove -- the inward pressure on the groove from the ridge is what holds it in place?

MR. CLARK:  Correct, but --

THE COURT:  Not the bonding action between the face surface of the disk, and the surface of the ring?

MR. CLARK:  Correct.

In the shrink-fit situation, you don't have a bonding layer.  You don't need to have a bonding layer.

You can have a bonding layer.  You can have a bonding layer, as well, which is Claim 32.  It would be Figure 2A, with a ridge and a groove, and -- and bonding material, such as an adhesive or solder.

But you don't have to have those.  You can just have the ridge and the groove.

**THE COURT:**  Well, I guess my question is:  18 is phrased a little differently than 1, because it talks about not "bonded to a back face."  It says "bonded about a periphery of one face of the disk."

**MR. CLARK:**  Correct.  That's why --

**THE COURT:**  So let me ask your opponent:  Why doesn't that -- that seems to be broader.  And why wouldn't that cover this situation?  Because you're saying that, yeah, it's not bonding to the face, the surface; but it is bonding to the groove that's cut into the surface of the disk.  And that could constitute, quote, "the periphery" of one face; could it not?

"Bonded" -- and it doesn't say "to"; but "bonded about."

Maybe you can tell me what that means.

**MR. SHAUB:**  Well, to tell you what it means, I think one of the key things is, again, in the patent prosecution history of the reissue patent, one of the things that we came across was Lam made an assertion, in order to avoid prior art raised by Shigeru and Takao, that -- and in that particular instance, it overcame the Shigeru/Takao prior art by -- by

requiring a bonding layer in regard to the Claim 33.

And we were looking at the Claim 33.  And we -- we then realized if Claim 33, which -- I think it forms and -- it forms the bond.  Then that means that Claim 18 has to have been -- have a bonding layer, because Claim 33 forms the bonding layer, but it's -- it already has -- it already has received the bond -- bonding layer from Claim 18.

So we -- we think that in that one section with regard to the prosecution history, we have a situation where you have a bonding layer that's being cured.  And when the curing is done, then you've got the layer in Claim 33.

And in Claim 32 -- I'm sorry.  I misspoke myself earlier. In Claim 32, in addition, that's a dependent claim.  And under, you know, standard claim construction, we have to conclude that Claim 18, which is the independent claim, must have a bonding layer because of the fact that that follows from studying Claim 32.

Go ahead.

**MS. MERRILL:**  Okay.

**THE COURT:**  All right.  Let me ask you.  One could reach the opposite conclusion through claim-differentiation analysis.

24, which is dependent on 18, specifically requires a bonding layer.  18 does not have the words "bonding layer" in there.  It just says "bonded about the periphery of one

face."So, under traditional claim-differentiation doctrine, 18's got to be broader than 24; at least, there's a presumption of such.

MR. SHAUB:  Mm-hm.

THE COURT:  And 24 has a bonding layer.  18 does not limit it to a bonding layer.  So one might read this to say, "Look.  18 includes something without a bonding layer."

MS. MERRILL:  If I may --

MR. SHAUB:  Well, interestingly, just to conclude, then I'll let my co-counsel here -- because she's worked in this area.  Just to conclude, then, that would mean that one of the dependent claims to Claim 18, using a differentiation, would -- would indicate that the Claim 18 disk is -- does have a bonding layer.  And now the Court has pointed out in Claim 24, on that, that would not be the case.

I would like to --

THE COURT:  No.  It's the opposite.  24 claims a bonding layer.

MR. SHAUB:  Yeah.  I understand.

THE COURT:  What you just said is 18 implicitly contains -- requires a bonding layer; and that makes 24 redundant.  And there's a presumption against redundancy.

MR. SHAUB:  Yeah.  And yet, if it does have a bonding layer, it renders Claim 32 redundant.

THE COURT:  Not necessarily, because 32 adds the

element of pre-stressed support rings, in order to impart a radially inward compression.

MR. SHAUB:  On what?

THE COURT:  On the disk.

MR. SHAUB:  No, on -- no, on the bonding layer.

THE COURT:  Well, it says -- it says on the disk.  Now, one could say --

MR. SHAUB:  Well --

THE COURT:  One could say --

MR. SHAUB:  In the --

THE COURT:  Hold on.

One could say that, if you look at the specifications, the pre-stressed discussion in the specifications does contemplate a bonding layer.  That is true.  And so it seems to me that 32 also assumes, implicitly, that there is a bonding layer.

MR. SHAUB:  Okay.

THE COURT:  24 explicitly requires a bonding layer.

MR. SHAUB:  Right.

THE COURT:  Both of those are dependent on 18.  That doesn't mean 18 has no bonding layer.  In fact, one could suggest that it doesn't require it, because the other elements -- dependent elements -- do require a bonding layer.

So that's my question.  Given the doctrine of claims differentiation, and the fact that 18 does not specify a bonding layer, isn't the opposite of what you said true?

Why does 18 necessarily require bonding layer?

**MR. SHAUB:** Your Honor, we have a separate argument for this area, which is kind of an overarching or overreaching argument. And --

**MS. MERRILL:** So --

**MR. SHAUB:** My counsel here wanted to comment on it. So let me find that.

**MS. MERRILL:** Okay. We have a situation here where we have to consider, as well, the prosecution history, and statements that were made to the Examiner. So if -- just to walk through a little bit, so --

**MR. CLARK:** Your Honor, I'm sorry to interrupt, but can really cut this very short if I could just speak for 30 seconds.

**THE COURT:** Yeah. All right.

**MR. CLARK:** Before Judge Breyer, the defendants admitted that Claim 18 didn't require a bonding layer.

Their responding claims-construction brief said as follows -- exactly what you said, which is, "Claim 24 limits Claim 18 by specifying that the bond of the support ring to the electrode disk be by means of a bonding layer. Now, from Claim 24, then, we know that Claim 18 does not require a bonding layer."

That's page 8, line 19 to 21 of their claim-construction brief before Judge Breyer.

And they went further, Your Honor.  In the motion for -- in opposition to Lam's motion for reconsideration they said at page 9, "The patent teaches that an electrode assembly may be bonded together, with or without a bonding layer."

THE COURT:  Wait.  Say it again.

MR. CLARK:  "The patent teaches that an electrode assembly may be bonded together, with or without a bonding layer."  And that's in the opposition to --

THE COURT:  Referring to which claim?

MR. CLARK:  Your Honor, I don't have -- I do have the brief back there (indicating).  I'm not sure exactly which claim it's talking about, but I have another quote here, Your Honor.  "The Court's interpretation takes into account that Claim 18, as opposed to Claim 24, does not necessarily require a bonding layer."  And that's at page 11 of the opposition to --

THE COURT:  This is the Xycarb's brief?

MR. CLARK:  This is Xycarb's brief, Your Honor.

MS. MERRILL:  Your Honor, I don't think the 30 seconds really addressed what I was going to say.

THE COURT:  Okay.

MS. MERRILL:  Okay.  Here's the problem with this argument.  The term "bonded" in Claim 18 can't mean something different than the term "bonded" in 32 and 33.

THE COURT:  Wait, wait.  Say it again.

**MS. MERRILL:** The term "bonded" in 18 can't have a different definition from the word "bonded" that you see in Claim 32 and 33. I mean, we have that one word.

And the prosecution history and their admissions from Lam that state that -- and that show that that can't -- that has to have a bonding layer. And I can give you the specifications. For example, if you go to -- oh, we have some slides on this that would show it better, but I have the cites. So column 5, 56 through 62 of the patent specifications. Here, the patent states in uncertain terms --

**THE COURT:** Column 5.

**MS. MERRILL:** Column 5, lines 56 through 62.

**THE COURT:** 56. Okay.

**MS. MERRILL:** Okay. So the patent there states in no uncertain terms that a certain amount of mismatch in the coefficient thermal expansion can be tolerated when there's a bonding layer. So we have to have -- where there's a mismatch of the two materials, there has to be a bonding layer.

This is also repeated in column 2, lines 65, through column 3, 3. So again we have -- where there's not a ductile bonding layer, there can be no mismatch in the coefficients of thermal expansion. So what we get from this --

And then in the abstract, we see this again. The abstract says the support ring is bonded to the electrode plate using a bonding layer; usually a ductile metallic bonding layer which

provides effective thermal and electrical coupling, while committing a degree of thermal expansion mismatch between the support ring and electrode plate.

The stronger of the two are the first two I gave you; but more importantly is if you go to the appeal brief and the prosecution history of Lam, on page 101.  To overcome prior art, Lam admitted that both Claims 32 and 33 require a bonding layer.  And so they basically --

THE COURT:  What page is that?

MS. MERRILL:  That's page 101.

THE COURT:  Of the brief?

MS. MERRILL:  And on page 103, as well.  And they say that support ring 14 can be formed of a material which has a slightly larger thermal expansion coefficient than that of the electrode plate to "pre-stress" the support ring, provide regularly inward compression on electrode plate, and bonding layer.  So they were saying that in order to overcome Takao.

And then we even have an example, if you'd like, from Dr. Glew.  In his declaration -- oh, no.  That's on another aspect.

So what you end up seeing is the '266 actually teaches away from shrink fit.  So it's -- and I have some other examples separate from the bonding layer in that regard that I'd like to cover at some point.  We don't have to get to it now, but the --

THE COURT:  Well, but --

MS. MERRILL:  We have the term "bond" in 32 and 33. And we have language in the specifications and in the -- in the history that says bond is -- must have a bonding layer when it's used in 32 and 33.

So you have to presume from that that the same exact word in Claim 18 has the same requirement.  You can't have a different definition.

THE COURT:  And why isn't the term "bonding layer" used throughout, and not used expressly, like in Claim 18?

MS. MERRILL:  Well, I think what's really happened is that the --

(Discussion off the record.)

MS. MERRILL:  Okay.  I think what's happened -- why it's not used throughout -- I mean, it's used throughout the specifications.  And that's explained throughout that.  And I think there are a lot of ambiguities in -- throughout the whole patent.  And then we have the prosecution history which actually has changed the scope of the patent, itself, that needs to be considered.

So whatever one thought at the time when the patent was filed, there's some shifts in that, based on the prosecution history and the arguments that were made that caused Lam to survive its patent being invalidated.

MR. CLARK:  May I respond to that aspect, Your Honor?

**THE COURT:**  Well, one thing I'd like you to respond to specifically:  Show me a place in the specifications where a bond is accomplished without use of a bonding layer.

**MR. CLARK:**  Claim --

**THE COURT:**  In the specifications.

**MR. CLARK:**  Your Honor, the specification -- yes.  Claim 33.

**THE COURT:**  Well --

**MR. CLARK:**  It's not in the description.

**THE COURT:**  That begs the question.  Can you show me a place in the specifications that lays this out in plain fashion?

**MR. CLARK:**  Your Honor, the description.  I'm not talking about the specifications.  I'm talking about the description, because the claims are obviously part of the specification.

**THE COURT:**  Yes.

**MR. CLARK:**  So you've got Claim -- you've got Claim 33, which clearly does not --

**THE COURT:**  Okay.  Besides the claim language, itself, show me somewhere in here where there is an example of a bond to be obtained that doesn't use a bonding layer.

**MR. CLARK:**  The -- the embodiments in the description all describe the use of a shrink fit together with a bonding layer, but that was my objection, Your Honor.

**THE COURT:** Wait, wait, wait. What?

**MR. CLARK:** The embodiments in the specification -- in the description do refer to shrink fit in the context of a bonding layer. They do talk about compression.

**THE COURT:** Well, I don't understand. Why would you need a bonding layer, if you had just a shrink fit?

**MR. CLARK:** I guess that's why the engineers would design it --

**THE COURT:** Give me an example of that.

**MR. CLARK:** Well, Claim 32 is -- so, Your Honor, you may -- for example, you may want to put --

**THE COURT:** Citing the claim language is helpful. Obviously, that's a starting point of all of this; but it also is enlightened by what I call the "specification" -- what you call the "description" -- that includes the abstract. That includes the summary. That includes the embodiment.

Show me somewhere --

I'll be more specific. All the way up to line -- page 8, line 30. From page 1 to page 8, show me somewhere that it describes a bond that is obtained, other than by use of a bonding layer. Is there any language in here?

**MR. CLARK:** Your Honor, the -- if I can just answer with respect to the shrink fit --

**THE COURT:** No. I'd like you to answer my question.

**MR. CLARK:** Okay.

**THE COURT:** If there isn't, please admit it, and we'll go on to the next question.

**MR. CLARK:** Yes. Yes, Your Honor. The soldering, welding, brazing do require a bonding layer.

**THE COURT:** Yes.

**MR. CLARK:** Yes.

**THE COURT:** And so does adhesion, epoxy.

**MR. CLARK:** Correct. That's correct.

But a shrink fit doesn't. And we, of course, rely on a shrink fit.

**THE COURT:** Yeah. And I'm asking you: Somewhere between page 1 and page 8, can you point to -- whether it's in the summary, in the abstract, or the embodiment -- any description of how a bond can be obtained without using one of those bonding layers?

**MR. CLARK:** Ah, the description does not describe a shrink fit without a bonding layer; or as best I can recall, any other embodiment without a bonding layer; but the claim does. Claim 33 does. And the claims are not to be limited by the embodiments in the description.

**MS. MERRILL:** But they are to be limited by the specifications and the statements in front of the prosecution history; statements that are uncertain that I specified before.

One other point, Your Honor, on this is: The reason why we're not going to see any of this is because when you have a

mismatch, it requires -- in the coefficients of the two components, it's required to have a bonding layer.  That's what -- the essence of what the patent is teaching.

It says that in column 5, 56 through 62, it says, "Typically bonding will be performed; either brazing, soldering, or use of adhesives to form a ductile bonding layer, preferably having a low vapor pressure.  The ductility is desirable, so that any thermal expansion mismatch between electrode plate and support ring will not result in breaking or fracturing of the bond in the electrode plate."

And this -- and 65.  Starting at 65, same column -- it's column 2.  I apologize.  So -- but this is one of the ones I cited earlier.  It says, "The material of the support frame will usually be chosen to have a thermal expansion coefficient which is generally compatible with that of the electrode plate, but a certain amount of mismatch can be tolerated when the bonding layer is formed from a ductile material."  So any time you have a mismatch, you have to have a bonding layer.

And that's consistent with prosecution history.  So will we have that in -- where we have Claim 32.  There's got to be a mismatch to have a regularly inward force.  So there has to be a bonding layer.

And in 33 there has to be a bonding layer, because you're -- you have the same phenomena that takes place.

And then from that, if you have the word "bond" that's used

in one claim, it's got to be used the same in Claim 18.  Yeah.  So --

MR. CLARK:  Your Honor, this is just another --

MS. TAM:  I'm sorry.

THE COURT:  Hold on.  Let her finish.  And then I'll let you respond.

MS. TAM:  The reason why we're harping on this point is, not only are we saying the specification doesn't teach shrink fit, but we're actually saying that the specification teaches away from shrink fit, because, like Counsel said, shrink fit doesn't require a bonding layer.  So if you don't have a bonding layer, that means you're going against the specification, which Ms. Merrill just described.  If you don't have a bonding layer, and you don't have that ductile bonding layer, that means you're going to have a breaking or fracturing of the bond.  So it's teaching away from shrink fit, because they -- Lam has already admitted that shrink fit doesn't require a bonding layer.

MR. CLARK:  Your Honor, we're here today to, obviously, construe the claims.  And -- but we're spending our time construing the description.  There's nothing -- there's no claim that claims a ductility.  There isn't.  That is considered as an attractive feature of -- of one of the embodiments in the patent, but it's not claimed.

THE COURT:  Well, put aside ductility.

It does -- every -- you're saying, "Let's just read the plain language of the claim.  Doesn't say anything about a bond layer; and therefore, we could just ignore that."

MR. CLARK:  Well, no.  You have to look at it in context, Your Honor.  You've got two -- at least two descriptions of embodiments with shrink fit where there is bonding.  And I've told you I agree with you that the embodiments that describe shrink fit also describe bonding, but that's --

THE COURT:  Well, besides 33, what's the other one that you claim describes shrink fit?

MR. CLARK:  32.  But 32 talks about -- is dependent from Claim 18.  And Claim 18 must be bonded by some other method.

So you've got Claim 18 -- bonding under Claim 18, which could include a bonding layer.  And you've got -- and you've got your shrink fit.

THE COURT:  Well, 32 requires pre-stress.  Okay?

MR. CLARK:  Correct.

THE COURT:  And unless you're going to argue that that term -- and the term is so obvious, that it needs -- we don't -- we don't need to look to the specifications, which I don't think is the case; but if you do look to the specifications when they describe what is pre-stress is, it has done so at page 6, column 6, lines 48 through 64.  It describes

what "pre-stress" is.  And it talks about and requires a bonding layer at a temperature -- forming and curing the bonding layer at a temperature about the expected operating temperature.  And so the only reference to pre-stress that's in the specifications or in the embodiment talks about a bonding layer.

And it's obvious because, as the ring cools, it's going to want to contract faster than the plate that has a lower thermal expansion coefficient; and therefore, so long as they are bonded together, it's going to try to pull the edges; compress it in an inward fashion; radial fashion.  So that makes sense.  I mean, I understand that.

MR. CLARK:  Well, Your Honor, the fact that you can have a -- a bond by shrink fit without a bonding layer is manifested by the accused product, which does exactly that.  It doesn't have a bonding layer.  So mechanically, it can be done.

The question is:  Does the claim claim it?  Does the patent claim it?

THE COURT:  That's what I was talking about.  Look at Claim 32.  One of the particular terms is "pre-stress."

MR. CLARK:  Yes.  And pre-stress is defined in the patent.  It's -- it says -- and if I could find -- I'm afraid I've got 40 pages of notes here, and we're going all over the place, but I'll find it, Your Honor.  Here we are.  It's column 6, lines 48 to 64.

**THE COURT:**  Which is exactly what I just quoted to you.

**MR. CLARK:**  Okay.  Now, if you carry on to that thing, it says -- it says that, "More specifically, by utilizing the support ring 14" -- and that's your Figure 1 support ring, if you have Figure 1 -- "More specifically, by utilizing the support ring 14 which is formed from material which has a slightly larger thermal expansion coefficient than that of electrode plate, and forming or curing the bonding layer at a temperature above the expected operating temperature, the support ring will apply a constant compressive force on both the electrode plate" -- remember that electrode plate -- "and the bonding layer."

Now, I've said to Your Honor I've conceded that the embodiments in the specification -- at least, there are, rather, in the description -- do talk about bonding layer; but nevertheless, this explains what pre-stress is.  And it's exactly what we were told at the tutorial.  It's heat, it's joining, and it's cooling.  And that's how the bond is formed by a shrink fit.

That's exactly what this -- what the extract from the --

**THE COURT:**  But you're reading out bonding layer?

**MR. CLARK:**  Yes, because --

**THE COURT:**  And you're also reading out Figure 4 and Figure 1.

**MR. CLARK:**  Yes, yes, because figure -- you see, what I'm trying to distinguish, Your Honor, is that a bonding layer is not necessary.  Defendants have conceded that.  They've conceded that before Judge Breyer.  It's cast and stone.

So now I'm pointing out that although these descriptions talk about a bonding layer, shrink fit works in exactly the same way, whether or not you have a bonding layer.

Now, an engineer might choose to have a bonding layer for some reason.

**THE COURT:**  And that's exactly why, to the extent the patent appears to require a bonding layer, that tends to read away from a shrink fit.

And let me point something else out to you.

**MR. CLARK:**  Yeah.

**THE COURT:**  At the end, at lines 62 through 64 of that same column, it says, "Thus thermal cycling will be less likely to fracture the electrode plate, which is fragile relative to the supporting ring."

In other words, what is the purpose of having this pre-stress?

You say the purpose is to accomplish shrink fit.

This seems to say the purpose is to minimize fracturing, by having a constant radial inward compression vector factor that tends, I guess, for some reason, to reduce the risk of fracturing of the plate.

MR. CLARK:  Yes.

THE COURT:  That's a different function than saying, "Let's keep this whole thing together through friction."  In other words --

MR. CLARK:  Yes, but Your Honor, the bottom line is that, in fact, it keeps the assembly together.

Whether the objective is to not fracture the plate, or whatever the objective might be, the fact of the matter is that it describes a shrink fit.  And if a shrink fit can be used for some purpose that's not disclosed in the description, so be it.  And it happens to have been claimed in Claim 33.

Now, the fact that Claim 33 might not achieve all of the objectives of the description doesn't make Claim 33 any less effective and any less a description of a shrink fit bond without a bonding layer.

MS. TAM:  May we address that, Your Honor?

MR. CLARK:  If I can just finish.

THE COURT:  Hold on.  Let him finish.

So the fact that nowhere in the specifications is there mention of pre-stress, or a differential in thermal expansion coefficient being -- that the purpose of that is to hold the plate in place -- the fact that that is not mentioned in the -- anywhere in here is irrelevant.  Is that right?

MR. CLARK:  No.  The purpose of holding the plate together comes from the fact that compressive force is on

electrode plate.

THE COURT:  Yes.

MR. CLARK:  It's impossible that there be compressive force on the electrode plate, without there being some shrink fitting.  Now, the degree of shrink fitting would depend on --

THE COURT:  I understand all of that.  I learned that in the tutorial.  I have a different question.

MR. CLARK:  Yeah.

THE COURT:  The fact that -- the purpose of the different thermal expansion coefficients is, in the case of shrink fitting, is to hold the plate in place, as opposed to exerting some kind of radial compression that reduces the risk of fracture.  The fact that it was missing here is -- you say is really not relevant, because of the plain language of the claims, themselves?  Is that why?

MR. CLARK:  Yes.  It's in Claim 33, Your Honor; but it's the same stress that has certain effects.  It has an effect of integrating the assembly.  It has an effect, if it is so designed, of not fracturing the electrode plate.  It has a whole bunch of different effects, but that doesn't detract from the fact that it's -- that it's a shrink fit.

And, Your Honor, to go back to your point about Claim 18 and Claim 24 on claim differentiation, I mean, it's absolutely clear that a bonding layer is not required by Claim 18, not only for the reasons that you mentioned for claim

differentiation, but because defendants have admitted that over and over and over again.  So the patent contemplates a bonding without a bonding layer.

Now the question is:  What are the --

It goes back to your very first question.

What other forms of bonding are contemplated by the --

**THE COURT:**  All right.  Let me ask Xycarb.  What about Claim 18?

First, you have the doctrine of claim differentiation, because you have "bonding layer" implied in Claim 32; and explicit in Claim 24.  That would suggest the term "bonded" is more than just a bonding layer.  Otherwise, 24 would be redundant.

Second, it says "a supporting ring bounded about the periphery of one face."  So why couldn't you say a groove that's cut into the plate, as in your client's product -- that the bonding is effective, quote, "about the periphery of one face," when it's the groove shrink fit method?

**MS. MERRILL:**  Here's the reason.  Because we have prosecution estoppel.  And we have Lam making one argument on one side, and one argument on the other side.

So, I mean, Your Honor was on a right track earlier, when you were talking about purpose of the pre-stress that's discussed in the patent is to alleviate stress fracturing.

If you look at Dr. Glew's declaration and Dr.Lam's

declaration, it's littered with support that the point of shrink fit is to create a joint; a bond.  I mean, the purpose of --

THE COURT:  Wouldn't it also have a side benefit of reducing risk of fracture, because you're still imparting radially inward pressure?

MS. MERRILL:  But the stresses are very different in those.  I mean, the -- we have another argument that needs to be dealt with on the term "desired stress," as well.

THE COURT:  No.  I'm not there yet.

MS. MERRILL:  Okay, but the -- so you're talking about the radially inward pressure of Claim 32?  Is that what you're referring to, or are you talking about 33?

THE COURT:  Well, I asked a fairly straightforward question.  Does shrink fitting, which imparts some compression pressures inward -- right? -- does that also accomplish the goal of minimizing or reducing the risk of fracture?

MS. MERRILL:  It's a different issue, because the reason -- if you recall on the examples of the slides we had, and where you had two materials, and we went through the different temperature changes, and then the -- you start having the warping of the plate -- it's not the compression that -- when you have shrink fit, you don't have warping of the plate, because you have a direct pressure.  Okay?  So it doesn't -- there's no fracturing issue.

The fracturing issue is as a result of when the warping starts, you start having tensile stress on the lower part; and that's what causes the fracturing of the plate. So when you have the shrink fit, the stresses are direct. And there's no fracturing of the plate. It's not an issue, because the fracturing could only occur when you bend it.

I mean, the -- if -- the shrink-fit forces are probably four or five times greater than the forces you get through pre-stress. And if you were to have a fracturing-of-the-plate issue, you would definitely have it in Xycarb model, because -- but it doesn't happen, because you have direct forces rather than bowed. When you have the pre-stress, you have the forces on the top face, and along the bonding layer. And it pulls the electrode. And it starts to curve it like that (indicating). And then when you have the tensile stress because of the warping, that's what causes the fracturing.

And it's shrink fit -- it's just -- shrink fit is a totally different issue.

But you run into other problems in the construction. They're trying to -- I mean, they're trying to say that Claim 32 and Claim 33 are the essence of shrink fit. Therefore, "bonded" in Claim 18 is shrink fit.

But the first part of their argument fails completely because of the things that they they've said, and because their patent actually teaches away from shrink fit, as we were saying

before.

THE COURT:  Well, you're repeating what you said, and not answering my question.  I have a very specific question.  Dependent Claim 32 and Dependent Claim 24 require a bonding lair.  It's implicit in 32.  You may disagree, but I think it's implicit, because pre-stress, when you look at the specification, it describes the bonding layer and all that sort of stuff.  And bonding layer is expressed in Claim 24, but those are all both dependent on 18.

So under the doctrine of claim differentiation, number one, doesn't that suggest that the word "bonded" encompasses more than a possibility of bonding without a bonding layer; and, two, the fact that it says "bounded about" -- not "on -- "bonded about the periphery of one face" -- isn't that archaic, a very broad language?

MS. TAM:  Even -- even if it's true that it may be broad, and it may contemplate something more than the bonding layer in Claim 24, regardless of that, it still doesn't accomplish shrink fit, because --

THE COURT:  It doesn't encompass --

MS. TAM:  Yeah.  Sorry.  It doesn't encompass shrink fit.  So even if that is possible under the patent, it is very clear from the patent that it doesn't encompass shrink fit.

And it's really important to note that Lam is advocating two completely conflicting definitions of "shrink fit,"

although Lam now is --

THE COURT:  Well, let me ask you.  You say it doesn't encompass shrink fit.  What does "bond" encompass, other than bond layer process or technology?  What else could it be?

MS. MERRILL:  I don't think that the fact that there isn't an example that exists in actual practice changes the fact that all of the prosecution history and -- and -- and the conflicting aspects, and even the declaration of Dr. Glew makes it clear that "bonded" can't be used for shrink fit.

MS. TAM:  And also, in Lam's later patent, the '012, it noted that the '456 covers metallurgical and adhesive.  So even if it doesn't cover --

THE COURT:  What's the relevance of that?

MS. TAM:  The reason why is because it could encompass other metallurgical bonding, besides one of the bonding layer.  Brazing has a bonding layer, soldering has a bonding layer, but welding doesn't have a bonding layer.

THE COURT:  Welding?

MS. TAM:  Yes.  Welding is metallurgical bonding, but it doesn't have a bonding layer.

So Claim 1 -- I mean Claim 18 encompasses metallurgical and adhesive bonding, as confirmed by Lam.  And it encompasses welding, because welding is a metallurgical bonding method.

THE COURT:  So that's an example of a bond without using a bonding layer --

**MS. TAM:**  Yes.

**THE COURT:**  -- other than shrink fitting?

**MS. TAM:**  Yes.  And so --

**THE COURT:**  Let me ask you to stop you right there.  Do you disagree with that?

**MR. CLARK:**  Your Honor, yes.  Bonding out of patent -- it says that -- this is -- I'm reading from column 5, starting at line 53.  "The support ring 14 may be bonded to the electrode plate by any suitable process which provides the necessary bonding strength, as well as thermal and electrical characteristics."

So it's not -- now, I -- I agree that the patent embodiments are limited to -- they say, typically, soldering.  And in fact, directly after that quote I just read you it says, "Typically, bonding will be performed by either brazing, soldering, or use of adhesives," but that's typically.  It doesn't mean exclusively.  It's any suitable bonding method.

And, Your Honor, to get back to --

**THE COURT:**  But do you agree?  My specific question is:  Do you agree that welding would be a form of bonding?  It may not be practical here, but welding is a form of bonding, without the use of a bonding layer?

**MR. CLARK:**  It is possible.  Some metallurgical bonds do not require a bonding layer.  Whether or not welding is one of them, I don't know.  I don't have the scientific knowledge

to know; but I do have a declaration from Dr. Glew that deals with metallurgical bonding, and what it is, and that it doesn't require a bonding layer, which I'd be happy to submit to the Court.

**THE COURT:** Okay. Well, I appreciate that. Thank you.

**MR. CLARK:** Your Honor, if I could just go back to pre-stressing, pre-stressing is actually defined in the description. And the definition has nothing do with -- with fracturing electrode plate.

The passage that we looked at before, which is column 6 at line 48, says "pre-stress the support ring so that it provides radially directed inward compression on the electrode plate 12."

It's "so that." So the objective of the pre-stressing is the radially directed inward compression. And it's that radially directed inward compression that is the shrink fit.

**THE COURT:** Well, what about the "more specifically" language?

**MR. CLARK:** Well, it goes after that. Oh, yes. Yeah. Now, if you just bear with me one second, Your Honor. And that is the next part about the compressive stress helping to inhibit stress is a factor. It's not the objective of the pre-stress. Then it does go on, and it says, "More specifically, by utilizing a support ring." And then it goes

on to describe the classic shrink fit of heat, joining, and cooling.

Now admittedly, it contemplates not only a shrink fit on the electrode plate, but on the bonding layer.  And I've said over and over again that there's nothing in the description that -- that claims a shrink fit without a bonding layer; but it claims a shrink fit.  And that's the important part.  And then when you go to the claims --

**THE COURT:**  That begs the question:  Does it, or does it also describe the situation where the support ring simply is glued or adhered to the surface of the plate with pre-stress, so that at room temperature it is trying to pull everything in?  Isn't that also -- it is covered by this language?

**MR. CLARK:**  Yes, Your Honor.  As soon as you say "pull everything in," you're describing a shrink fit.

**THE COURT:**  No, not necessarily.  This is not a shrink fit.  What I'm holding in my hand could well be, if the thermal TEC is greater for the ring than for the plate, right now, as I hold this, it is exerting a radially inward pressure toward the center of the plate, even though this is not shrink fit.

**MR. CLARK:**  Well, with respect, Your Honor, I disagree.  That's an adhesive that is holding it together. It's not a shrink fit.

**THE COURT:**  I'm not saying what's holding it

together.  I'm saying there's radially inward pressure being exerted via the adhesive.

MR. CLARK:  Your Honor, I'm not sure that that's technically correct.  I'm not technically qualified to deal with that.  Dr. Glew is here, and can address it; but I don't believe that --

THE COURT:  Well, let's hear from him.

You know, I thought that was the whole purpose of Claim 32, is that you add the element that this ring has been pre-stressed, so that you attach it when it's in its heated state.  And when it cools, it's pulling everything toward the center.  That helps guard against fracturing.

MR. CLARK:  I don't believe that that component is used.

THE COURT:  Maybe not this one, but I mean that's --

MR. CLARK:  No, it is.  But Your Honor, "pre-stress" is code for "shrink fit."  And you find that from the description in the patent that I just read to you.

THE COURT:  So you're relying -- all right.  So you are putting great emphasis and putting your eggs in column 6, lines 48 through 64?

MR. CLARK:  Yeah.  That's where "pre-stressed" is defined --

THE COURT:  All right.

MR. CLARK:  -- as being the radially directed inward

compression, which, combined with heat, joinder, and cooling, is a shrink fit. And that's what "pre-stress" means.

**THE COURT:** Well, let me ask you a simpler question. You say in your brief that shrink-fit technology has been around for decades. It's old technology. Right?

**MR. CLARK:** Correct.

**THE COURT:** So why is there never employment of either the words -- well, of the term "shrink fit," or something close to it? This is an application filed in 2003. Well, the original one was 1990. This is decades old. So even by 1990 there was such a thing, obviously, as shrink fit. Obviously, though, you wouldn't claim --

**MR. CLARK:** Sure, sure.

**THE COURT:** So why is it that one can go through all of the claims, all of the specifications, all of the diagrams, and nowhere do those words or something very close to it appear?

**MR. CLARK:** Well, of course, Your Honor, there's -- something very close that does appear, because it describes a shrink fit with a bonding layer. So shrink fit is described.

Now, as to why there's no description of a shrink fit without a bonding layer, as I stand here now, I can't tell you.

But let's assume, Your Honor, that it was just an oversight; that maybe it was a last-minute thought that they wanted to add a Claim 33. They thought, oh, wow, we described

shrink fit in the description, so let's -- let's contemplate a shrink fit without a bonding layer.

THE COURT:  Even in the prosecution history, where is there the term "shrink fit" used, as employed -- as an assertion that is employed or embodied or covered by this patent?

MR. CLARK:  Yes.  Your Honor, thank you for raising that -- the prosecution history, because we've been told over and over again that Lam has admitted that Claims 32 and 33 contain a bonding layer.  And that is flat-out not true.

Your Honor, I'd like to read the passage from the prosecution history that says that, because I have it in front of me.  And starting off at page -- I believe it's 103.  We say that the interpretation of Examiner is improper; that the Examiner didn't read the term bonded in light of the specification; that fastening and bolting and mechanical structure of a third-party kind, like a -- now, this is my example; not an example in the prosecution history -- such as the clamp or the fastener or a bolt is not covered by a suitable process, because you remember bonding is any suitable process.  And in the prosecution history we say bolting and use of a mechanical structure is not a suitable process.

But we absolutely don't anywhere --

THE COURT:  You're looking at your appellate brief?

MR. CLARK:  No, Your Honor.  I'm actually looking at

my PowerPoint presentations.

THE COURT:  I'm trying to see where.  Where --

MR. CLARK:  I don't believe I quoted all of this in the appellate brief, Your Honor, because what I've done is I've taken the entire submission.  In my PowerPoint, I've given the entire submission I was going to present to you, from beginning to end.

And in the final paragraph, we actually referred to shrink-fit bonding in -- in -- in the submissions to the -- to the Board of Patent Appeals.  So there's absolutely -- we did not -- Lam did not disavow.

THE COURT:  Well, I've never seen that.  Where is that?

MR. CLARK:  You probably saw it in their brief, Your Honor; but it's unsubstantiated.

THE COURT:  You disclaimed -- I think at page -- was it 22 of the appeal brief?  Is this right?

This is what they cite.  This is Xycarb's response claim construction brief, page 14, which they quote from your motion for reconsideration appeal brief.

MR. CLARK:  Your Honor, they're attached to Ms. Tam's declaration.  And I think in one of the motions -- I'm not sure which one it is now.  And I'll find it for you.

THE COURT:  Well, you say it excludes unbonded surfaces clamped together with a mechanical structure.  Is that

wrong?

MR. CLARK: Right. No. It's -- and it's ahead of that, Your Honor. It's before that, where they're distinguishing between -- because the Examiner took the position that bolting and fastening in any kind of attachment was covered by the word "bonding." And Lam's --

THE COURT: So what you claim was disclaimed is only bolting and a fastening; not any other kind of clamping.

MR. CLARK: Correct.

THE COURT: Is that what you're saying?

MR. CLARK: Correct. Exactly.

And to the extent -- in case there was any uncertainty later on, on the same page, we also -- well, I'm not sure it's on the same page. It's later in the brief -- we specifically say shrink fitting is -- we say that other forms of bonding are permissible under the patent. And we specifically refer to shrink-fit bonding.

THE COURT: I assume that's in your reply brief?

MR. CLARK: I believe so, Your Honor. Actually, I have it here now in front of me. It's -- it's Exhibit 6 to Cassandra Tam's declaration in the --

THE COURT: In what document is that?

MR. CLARK: -- in the intervening rights motion. That's our appeal brief. Lam's appeal brief. It's the second substitute appeal brief. And that -- that's headed "Bonded

does not" --

THE COURT:  This is page 24 and 25 of your appeal brief?  I believe that's what it is.

MR. CLARK:  I'm looking at 20 at the moment, but I'm going to 24 and 25.

THE COURT:  Because in your brief before me, that's where you cite the shrink-fit language.

MR. CLARK:  Yes, Your Honor.

THE COURT:  It says, "The '456 patent describes several types of bonded arrangements, such as soldering, brazing, and adhesive joints.  Given its broadest reasonable interpretation, 'bonded' could encompass methods besides those explicitly disclosed the patent.  See, for example, *Ex parte Holcomb*, wherein on page 10 of the decision, shrink-fit bonding and fusion bonding are described as creating a bond which can sustain substantial shear stress, or create a strong chemical bond.  In the present case, the Examiner is interpreting 'bonding' to cover surfaces which are unbonded, but clamped together by a mechanical structure.  The Examiner's interpretation of 'bonded' is thus unreasonable, and rendered the rejection of Claim 1 over Takao untenable."

MR. CLARK:  Right.  That is the extract, Your Honor, wherein we specifically include as a possible form of bonding under the '456 patent the shrink-fit bonding.  And clearly, we didn't -- we didn't disavow it.

THE COURT: All right. Let me ask. That doesn't sound like disclaiming shrink-fit bonding.

MS. TAM: According to the case Federal Circuit case *Biogen*, which we cited -- it's a Federal Circuit 2013 case that we cited in our reply to intervening rights. That case says that you don't have to explicitly disclaim an exact phrase, in order for a disclaimer, where certain meaning is disavowed.

So even though Lam argued or put in that word "shrink fit," which, we'd like to note, was put in after this case was filed -- this prosecution history was done after the case was filed, so we're not quite sure the purpose Lam's counsel did in inserting "shrink fit."

But the Examiner -- when citing this passage, it actually cited the entire passage that Your Honor read out, including the *Ex parte Holcomb* passage. The Examiner cited that entire passage in characterizing Lam's arguments as defining "bonding" to be the joining by soldering, brazing, and adhesive joints.

And Lam failed to -- and so the Examiner, even though he read that part of Lam's brief regarding brazing, soldering, and shrink fit, he didn't take that into consideration, and characterized Lam's arguments as only encompassing soldering, brazing adhesive joints.

And Lam refused to refute this characterization in its reply brief two months later, because --

THE COURT: Well, what was at issue is reading this

over the Takao prior art.  Right?  And Takao didn't involve shrink fit.

MS. TAM:  Yeah.  It didn't.

It involved just pure clamping.

THE COURT:  Right.  So all they were doing, in order to get around Takao, was disclaiming that -- whatever the clamping mechanism was in that case, that that's not being claimed here.

MS. TAM:  But the issue -- what we're trying to point out is the Examiner, in its answer to Lam's appeal brief, used that characterization of Lam's arguments.  And in Lam's reply brief to the Examiner's answer, Lam did not refute that characterization.

THE COURT:  Well, all right; but that's hardly a disclaimer, in the meaning of prosecutorial estoppel, just because they didn't refute everything that the Examiner said in response.

The critical thing is:  What did they disclaim in order to get around prior art?

MS. TAM:  Well, according to *Biogen*, they're -- they're not refuting that actually does lend to a construction of that term, and could be viewed as --

THE COURT:  Even if it's not material?  Even if that refutation was not material?

MS. TAM:  I think it depends on -- well, the term

being -- the term that we're talking about is "bonded."  And it goes directly to "bonded."  So we believe that is material.

THE COURT:  Well, it wasn't material to the issues that were raised by the Examiner.  Whether it included shrink fit or not really didn't affect the Examiner's decision relative to the Takao prior art; did it?

MS. TAM:  Even though Takao only covered clamping, the Appeal Board accepted Lam's arguments, and said that the patent doesn't cover -- doesn't cover a clamping action.

And Lam, itself, in the appellate brief on page 22, says that they exclude unbonded surfaces clamped together with a mechanical structure.  So even though they might spit out the word "shrink fit," they still exclude unbonded surfaces clamped together with a mechanical structure.

And in order to overcome Takao and receive the reissue patent, the Board of Patent Appeals actually said, quote, "Clamping action is not covered by the patent," which is exactly what shrink fit is.  It's a clamping action.

It's -- according to Lam's own expert, they -- he said that there must be an inner and outer member.  When you look at the actual figures of the patent, you don't see an inner and outer member of a clamping action.

THE COURT:  All right.  Well, let me ask Mr. Clark that.  What about this language at page 22 of the brief that doesn't say we're disclaiming fasteners and boating; it says

"excludes unbonded surfaces clamped together with a mechanical structure"?

**MR. CLARK:** Yes.  Your Honor, obviously, the mechanical structure they're talking about in that paragraph is the same mechanical structure they talked about three paragraphs beforehand.

Now -- now, defendants try to parlay that mechanical structure into saying, "Oh, well, shrink fit is a mechanical structure.  Therefore, by disclaiming bolting and fastening, you suddenly have disclaimed all mechanical structures of all kinds for all time."

Well, Your Honor, that's a nonsensical argument, with all due respect.  In order for there to be a disclaimer, the disclaimer must be unequivocal and unambiguous.  You can't draw an inference and say, "Well, we think that mechanical structure -- we can parlay this into meaning 'shrink fit.'  We expressly didn't disavow 'shrink fit.'"

**THE COURT:** So it was a regretful use of a broader term that wasn't intended.  It didn't have to say "mechanical structure."  It could say "mechanical structure via bolting or fastening"?

**MR. CLARK:** I mean, yes, they should have perhaps tied it to the antecedent structure of the paragraph.  And the paragraph -- but if you read that in its full context, starting from page -- from page 20, all the way through, it's -- it

cannot reasonably be concluded that Lam disavowed anything. And it absolutely certainly cannot be concluded that there was a disavowal -- that there was unequivocal and unambiguous disavowal of "shrink fit."

**THE COURT:** Another way of saying it is there was no need to have such a broad disclaimer in order to get around Takao?

**MR. CLARK:** Exactly, Your Honor.

**THE COURT:** And therefore, viewed in its context, that should not be read as a broad disclaimer?

**MR. CLARK:** Exactly.

**THE COURT:** Okay. Well, let me ask you another question. If we look at Claim 33, which, frankly, is the closest one -- it seems to me that is Lam's best argument for a broader reading of "bonding" -- it requires that the ring has a higher coefficient of thermal expansion than the plate.

Now, if you're going to do shrink fitting, it's not obvious to me why you have to have that; why you have to have a differential in coefficient thermal expansion coefficient, TEC, because, as was discussed at the tutorial, you can accomplish shrink fitting by simply heating the ring, leaving the plate at a lower temperature, and then placing the ring over the unheated plate, and then letting the ring cool. And it contracts. It will grab it. And it will hold it.

**MR. CLARK:** Yes, Your Honor. That's true.

**THE COURT:**  So that suggests that the thermal expansion coefficient of the plate is actually irrelevant.

**MR. CLARK:**  Well, it depends on which form of shrink fitting is adopted, Your Honor.  I agree with you that you don't have to have different coefficients of thermal expansion to create a bond by shrink fitting.  It so happens that in this claim, they claimed the form of shrink fitting which --

**THE COURT:**  But it seems odd.  If you want to interpret this as referring to shrink fitting, why not use the more obvious way?  Why would you bother heating up the plate?

**MR. CLARK:**  Your Honor, it may be that they chose the less-efficient method.  That's what they chose.

Now, you've heard from the tutorial that there are two methods.  And there may be different applications in which you can't -- perhaps there are situations in which the assembly has to -- you can't simply take the support ring, and -- a warm support ring, and put it onto a cold electrode plate; or there may be other applications of shrink fitting which you have to, perhaps, heat the materials to the same temperature.  I don't know.  There may well be, but the fact of the matter is that it's --

**THE COURT:**  There's nothing in the specification that talks about that.

**MR. CLARK:**  No, no.  The specification always talks about different CTEs.

**THE COURT:** And, indeed, if you did it the way I suggest, where it is you heat the ring, and you apply it to a cold plate, in a sense, in order to make sure you have a snug fit and it maintains a snug fit as the operative temperature rises, you would think you'd want the thermal expansion coefficient of the plate to either be equal to or greater than that of the ring, because if the ring expands quicker than the plate, that plate's going to drop off at some point; maybe at a very high temperature, but if anything why take a chance?

You'd think you'd want it the other way.  You'd want an equal or higher, so you'd always have a snug fit.  As the temperature rises, it's going to stay in there.  It's not going to shrink relative to -- the interference will still be there. And you can only ensure interference as temperature goes up if the TEC of the plate is greater than or equal to the TEC of the ring; not *vice versa*, as Claim 33 requires.

**MR. CLARK:** Yeah.  Your Honor, you may be correct. It may be there should have been a Claim 34, which claimed these -- the other kind of shrink fitting, which doesn't require different CTEs.  Maybe that's true; but that doesn't in any way diminish the fact that this claim claims shrink fitting with the differential CTEs.  And the fact that the accused product has different CTEs for its --

**THE COURT:** Well, but it suggests the reason why you have this differential is the setting where you've pre-stressed

the ring, and then everything starts to heat up.  And you --
you want a differential in order to continue a differential TEC
in order to continue that radial inward stress --

**MR. CLARK:**  Right.

**THE COURT:**  -- because --

**MR. CLARK:**  Well, Your Honor, it doesn't matter which
way you do it.  You still get the end of the radial stress,
whether you use different CTEs or the same CTEs.  It depends on
the application whether you can heat the -- the ring to such an
extent and keep the electrode plate cool.  And maybe that can
be done, but that's not what 33 claims.

And I'm sure that patents claim things which are probably
not necessary; the best way that subsequently subsequent events
lead one to believe that one should have claimed something
else, or whatever.

But it just so happens that Claim 33 does require different
CTEs.  And it does also -- it's not entirely academic, because
the accused product has different CTEs, too.

**THE COURT:**  Okay.

**MS. TAM:**  Can we address some of those arguments?

**THE COURT:**  All right.

**MS. TAM:**  I just wanted to go back to the appeal
brief and Lam's citation to shrink fit just really briefly.
Lam argues that it only limited the disclaimer to bolting and
fastening, but I'd like Your Honor to take a look at page 22 of

the appeal brief.  And Lam specifically says the Examiner's interpretation of "bonded" is inconsistent with the usage of that term in the '456 patent, while terms such as "attachment," blah, blah, "mounting," "securing," and "attached" could be interpreted to include bonding or mechanically attaching via bolting or fasteners.  In the '456 patent, the term "bonded" is -- and then the conventional sense.

I point to that, because Lam specifically distinguishes its use of "bonding" versus "attachment," as well as "mounting" "secured."  And so it's not just covering bolting and fastening, but all methods by which "mounting" or "secured" or "attached" can be performed.

THE COURT:  So tell me where in this brief is there a distinction drawn between "attachment" and "bonding"?

MS. TAM:  On page 22 of the appeal brief, they specifically distinguish "bonded" versus "attachment," "mounting," "secured" and --

THE COURT:  Well, all right.  I see that, but it still doesn't --

MS. TAM:  Yeah.

THE COURT:  It says, "'Attached' can include bonding, or mechanically attaching via bolting."

That "attachment" is a broader term?

MS. TAM:  Well --

THE COURT:  Is that the distinction?

**MS. TAM:** -- the distinction is that they use "attaching" for mechanical attaching. So it's any type of mechanical attaching, is what they're using "attached" for.

And "bonded" is more specific to metallurgical and adhesive bonding.

**THE COURT:** Where does it say that?

**MS. TAM:** That's the distinction we draw from their distinction of "bonded" versus "attached."

**THE COURT:** Where is that distinction? Because it says, "Terms such as 'attachment' and 'attached' could be interpreted to include bonding."

**MS. TAM:** Oh. The reason why we draw that distinction is because of their later-filed patents. In order to overcome the '456 as prior art, they had to distinguish the '456 in order to obtain, for example, the '577 patent and the '012 patent.

And in the '577 patent, they characterize the '456 as "brazing, soldering, and adhesives."

And the '012 patent -- they characterize it as, quote, "metallurgically or adhesively bonded."

So that's how we know that their use of the term "bonded" in the '456.

**THE COURT:** Okay, but within the prosecution history of this case, this patent -- the '266 or the '456 -- where is this distinction that you have just articulated?

**MS. TAM:**  Well, if -- if "attached" -- if "mechanically attached" is bolting or fasteners, then "bonded" must encompass the other realm of the patent, which is mechanical -- is -- I'm sorry -- is metallurgical or adhesive, which is brazing, soldering, or adhesives.

**THE COURT:**  Well, I'm not sure I see that; but the fact remains if we look -- step back and look at the logic of all of this, there was no need to disclaim all mechanical structures.  And so it was not material to getting around prior art.  Certain mechanical structures were, but not every single mechanical structure.

So I don't see why one should read that as a disclaimer, because that's the whole purpose.  When you disclaim something, it's like an estoppel.  It's a variant of estoppel.  There has to be a material representation.  And so if it wasn't material, nothing was really gained from that.  And why should that be a basis of an estoppel?

**MS. TAM:**  Well, we're asserting that Lam specifically wanted to use the term "bonded" for a specific purpose, and "attach" for a specific purpose, which is for a mechanical attaching.  So that's why their current construction of "bonded" is inoperable in light of this, because their current construction of "bonded" could include fastening, but it can't include fastening due to their disclaimer regarding bolting, fastening, and mechanical attaching.

**MS. MERRILL:** I think what we're having here is just a basic misunderstanding the engineering field, because if you look at Dr. Glew's dec., he -- I mean, what Lam -- and I think Lam earlier said, "Well, if it says 'pre-stress,' then you have shrink fit."

And you see Dr. Glew doing the same thing throughout his declaration. He mentions Exhibit 1, and says that that's -- shrink fit has been around for 50 years; but if you look at Exhibit 1, it doesn't say anything about putting two components together. It just talks about thermal expansion.

So you have Lam saying that anything that has to do with thermal expansion means shrink fit. Okay?

So then you have, on the second exhibit -- let me -- if you look at the Exhibit B, there's the equation of the stresses. And we went over that with Dr. Lin's declaration. And you have the stresses for shrink fit versus for thermal expansion; thermal residual stress. And that comes from the section that Dr. Glew, again, cites in Exhibit B. And if you look at the table of contents in there, you have a separation between -- in group nine -- in number 9 --

I can -- let's see. I have the cite right here.

You have the -- okay. So you have --

On page 11 of Exhibit B, the calculation that they use has only considered the components of shrink fit. Okay? It has nothing about CTE. It has nothing about thermal expansion.

And if you look at Exhibit B on page 14, there's a cite to thermal residual stress.  Okay?

But then when you look at the table of contents, you see that the section that Dr. Glew is relying on is stress analysis.  And it's broken into two parts.  One deals with pre-stress -- I mean, with shrink fit and press fits.

And then the section right after it deals with thermal stress.

If you look at the other sections in there, you see that these are all just different ways to do stress.  The two sections and the fact that they're beside each other -- the thermal and the shrink fit section in that book -- have nothing do with one another.  And that you can see even more as you go two pages later, and you look at the exhibit that talks about welded and bonded joints versus mechanical.  So there's a -- Section 8 talks about mechanical.  And Section 9 talks about welded and bonded joints.

The last one there -- I don't know if you're there, Your Honor.

**THE COURT:**  Well, I'm looking at it.

**MS. MERRILL:**  Okay.  The last one that's listed in Dr. Glew's Exhibit B on that page says "bonds."  Okay?

So then the question is:  Well, what is bonds?

So -- but we don't have the whole text.  Okay?

So I pulled out a more recent version of the text, and

everything matches up.  And I have a copy of it here.  And when you look at what is meant by "bond" in that section, it's adhesive bond.

So what we have is the '456 patent is about that Section 9.  That's welding, and soldering, and brazing, and adhesive bonds.  And another section is mechanical joints, including any kind of clamping actions.

And shrink fit -- we have the declarations from the experts that say that shrink fit is a clamping action.

So that's where the prosecution history comes in.  And it's important, because they're saying that a mechanical action and mechanical clamping with an unbonded surface.  Well, that's exactly what shrink fit is.

And they're trying to say, well, just because you have thermal expansion -- anything that has to do with thermal expansion -- all of a sudden, you have shrink fit.

And if you look through Dr. Glew's declaration, for example, he talks about Claim 33 describes a desirable compressive stress, and can be imparted in support ring of a material with higher coefficient of thermal expansion than the electrode plate, essentially, by performing a shrink fit.

Okay.  Then he defines -- this is paragraph 18 -- what shrink fit is.  And this is where it becomes very obvious that Dr. Glew doesn't really understand what shrink fit is, and neither does Lam, because it says "Shrink fit is fitting the

parts" -- well, he explains this right, except that he says that Claim 33 says that that's what it is.

So he says, "Shrink fit is fitting the parts at an elevated temperature, then returning to room temperature, wherein they shrink and bond. They bond at room temperature."

Claim 33 doesn't talk about that. It talks about creating a bond at an elevated temperature, and the bond already being created, and then you have the cooling take place.

So you can read on 33 being shrink fit is just not consistent with science and engineering.

MS. TAM: Also, in order to address Claim 32, as well, Lam is advocating that pre-stress in Claim 32 can be a process that further compresses an already bonded or formed assembly. And that's their reply at page 10.

However, that's not possible, according to Dr. Glew's declaration. Dr. Glew's declaration cites three different methods that he says shrink fit can be accomplished. In all three methods, it says that shrink fit is to basically form a bond. He doesn't say anything about shrink fit is to alleviate stress, or fracturing, or anything like that. He specifically says in all three methods that it's to form a bond.

So if you have Claim 18 that has a bonding layer, and it's already bonded through brazing, soldering, and adhesives, and Lam is claiming that you have shrink fit on top of an already bonded assembly, that's not possible. How can you fit an inner

and outer member together for pre-stress in Claim 32 on a

shrink fit, when it's already bonded?

**THE COURT:**  Well, let me ask you a more specific

question.  Let me ask Mr. Clark this question.  If you look at

Claim 33, it says that "the assembly, including support ring

and electrode plate, said method comprising bonding the support

ring about the periphery of the electronic -- electrode plate

at an elevated temperature, wherein material of the support

ring has a higher coefficient of thermal expansion than that of

the electrode plate."

So I know you've argued in your brief that that is the

method of obtaining the bonding, by using this differential in

thermal expansion coefficients.  That's what creates the bond

when it cools.

**MR. CLARK:**  Correct.

**THE COURT:**  But I'm curious.  This says -- and

perhaps your argument would be stronger if the words were,

"bonding the support ring," et cetera, et cetera, "whereby,"

instead of "wherein."

It doesn't really necessarily -- "whereby" makes a big

difference, because that says you're doing it through this

method.

This just says "wherein."

In other words, it could be separate.  It does not

necessarily mean that that's how the bond, itself, is obtained,

because it's simply describing a state of the bond, independently of obtaining.

**MR. CLARK:**  Well, Your Honor, you know, your interpretation has to -- has to take into account what is fairly being claimed.  And if you've got to conclude that "whereby" is a better term than "wherein," you're free to make that determination.

I think, you know, fairly looked at, this -- I mean, sure if we were about to rewrite this patent, there might be a lot of changes that we'd make; but we have to deal with what we've got in front of us.  And I think that, on fair reading, 33 does describe a shrink fit; a shrink fit bond; and only a shrink fit bond.

And there's no contemporaneous issue about that.  It's not as though there's a bond, and then something else happens. It's all -- it's a contemporaneous process of heating, and joining, and cooling; not exactly contemporaneous, but it's substantially contemporaneous.

**MS. MERRILL:**  IT sounds to me, Your Honor --

**MR. CLARK:**  And that's why --

And the same applies to Claim 32 Your Honor.  We're not shrink fitting an already bonded assembly.

If you look at -- if you look at, for example, Figure 1, the way you would apply 32 to Figure 1 is --

And the description exactly describes what Figure 1 is.

Now, Ms. Merrill said that that -- that Figure 1 doesn't describe any attachment.

Well, it exactly does.  It's what we talked about pre-stress.  Pre-stress.  It's -- the pre-stress discussion starts off by saying that, "in forming the electrode assembly 10 it will be desirable to pre-stress the support ring 14 so it provides radially directed inward compression on electrode plate 12."  So that's exactly what Figure 1 shows.

THE COURT:  Except Figure 1 is missing one important thing:  The groove and the ridge.

MR. CLARK:  Yes.  There are many -- there are many manifestations.  That would accomplish a shrink fit by shrinking, by cooling the outer --

THE COURT:  Not without a groove?  Not without a groove and a ridge?

MR. CLARK:  Yes.  Your Honor, if the electrode plate was inside of that, which is exactly what the figure shows, it's -- it's exactly what you saw in the tutorial, where you have a central section of a shaft, or whatever.  And you heat the outside section, and it contracts onto the inside section.

THE COURT:  You're saying that the disk depicted in Figure 1 is inside the circumference or the inner circumference of the ring?

MR. CLARK:  Yes.

THE COURT:  Well, that certainly doesn't show in

Figure 4, right above it.

MR. CLARK:  No, well, because Figure 4 gives you a different embodiment.  Your Honor, these are all different embodiments.

THE COURT:  And where is that described?  Where is Figure 1 described in the specifications that says that the circumference -- inner circumference of the ring is greater than the plate?  I didn't see that.

MR. CLARK:  Column 6.  It's just before line 48.  We were looking at that earlier, Your Honor.  I'll find it for you.

THE COURT:  And after this, we're going to end, because we've been going a long time.  The reporter needs a break.

MR. CLARK:  Yes.  I'm sorry.  We've been going at a rate, Your Honor.

So, you know, frankly, I mean, the only possible way that that Figure 1 makes sense is if the ring is on the outside. And it says so.

THE COURT:  Where?

MR. CLARK:  It would be desirable to pre-stress the support ring, so that it provides readily directed inward compression.  The only way that that ring can provide inward compression is if something's inside it.

THE COURT:  No.  It could do it if there's a bonding

layer that attaches to the face of the --

MR. CLARK: But then what's the point of the compression?

THE COURT: Well, the point of the compression is to create radially inward pressure -- compression -- to minimize fracturing.

MR. CLARK: But how does that -- how is that accomplished, apart from what the bonding layer does, assuming hypothetically with your hypothetical, with which I respectfully disagree, that this was placed on top of that support ring?

THE COURT: I'm going to take it under submission. We've gone now. I don't need any more argument.

As far as case management goes, I think I'm going to have to --

Let me just ask. And I don't have it with me. Is there -- before I get out my ruling on the claim construction, has there been any settlement discussions or any interest of any of ADR process?

MR. CLARK: We've agreed that within 45 days of your ruling, we'll have a settlement conference.

MR. SHAUB: And there's something I wanted to point out to the Court. Are we going to take a recess, or --

MS. MERRILL: Or is this over?

THE COURT: Well, what is it that you --

Tell me the subject matter.

MR. SHAUB: Well, about an hour ago I said I wanted to bring to the attention of the Court something.

MS. MERRILL: Yeah. And there --

MR. SHAUB: This is a different issue. And it kind of cuts across the question of the scope of the patent. And -- vis-à-vis bonding layers. And I wanted to point out that in our briefs, we included a section in which we indicated that the patent, itself, taught away from shrink fit, and taught a way of using bonding layers. And in doing so, we relied upon a number of cases that go that direction. And, you know, following --

THE COURT: I have your briefs. I have your briefs.

MR. SHAUB: But the abstract, itself --

THE COURT: I've read the abstract. I'm familiar with it.

MR. SHAUB: Okay. So what I'm saying is we found 20 -- over 20 different references throughout the patent to --

THE COURT: I understand.

MR. SHAUB: -- a bonding layer.

THE COURT: I understand. I've taken all of the argument in. That's it.

MR. SHAUB: Okay. I just want to make sure that gets into the mix.

MS. MERRILL: Okay. There's just one point that's

not in the case, Your Honor.

THE COURT:  I'm only going ask you about case management at this point.  If you're not interested in ADR, then we'll wait until I get out my claim construction --

MS. MERRILL:  Okay.  Your Honor, there's one other -- I'd mentioned earlier about the teaching away.  All through the patent --

THE COURT:  I'm not hearing -- I just said I'm not hearing any more on the merits.  So if you have a comment on case management, I'll take it right now.

MS. MERRILL:  Okay.

MR. CLARK:  Just one administrative matter.  It's not an argument.  I prepared a tutorial -- not a tutorial -- a PowerPoint which has some of the references in it that I've referred to.  Are you willing to accept that?

THE COURT:  I've got it in the briefs.  I'm not going to take any more supplemental briefs or PowerPoints.  We've been at this for almost an hour and 45 minutes.

MS. MERRILL:  Okay.  Yeah.  It's just the point that the precision that's taught in the patent isn't in the patent, even though it was required for shrink fit, based on the declarations.  That's all, your Honor.

THE COURT:  All right.  Well, then I will set some further deadlines once I get out my claim construction.  And I don't know whether you have settled on the method of ADR;

whether it's going to be settlement conference or private mediation or what.

MR. CLARK:  We're going to ask for a Northern District mediation ADR program; ask for a volunteer attorney.

THE COURT:  Okay.  Yes.

MS. MERRILL:  And we were planning 45 days from your ruling --

THE COURT:  So you want ADR mediation 45 days after the ruling.  Our ADR process.

MR. CLARK:  Yes.

MR. SHAUB:  Yes, your process, Your Honor.

MR. CLARK:  Are you going to set another a joint case management conference?

THE COURT:  Yeah.  Let's -- well, let's set one, but I may vacate that when I issue the ruling.  Let's set one for 45 days out, Betty.

THE CLERK:  April 17 at 10:30.

MR. CLARK:  Thank you, Your Honor.

THE COURT:  All right.  And I may change that, depending on how quickly I can get out a ruling on this.  All right.  Thank you.

(At 4:30 p.m. the proceedings were adjourned.)

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_Lydia Zinn_

_____    March 4, 2014
Signature of Court Reporter/Transcriber    Date
Lydia Zinn