1  J. David Cabello
   Texas Bar No. 03574500
   Admitted to the NDCA
2  WONG, CABELLO, LUTSCH,
   RUTHERFORD & BRUCCULERI, L.L.P.
3  20333 SH 249, Suite 600
   Houston, TX 77070
4  Telephone: 832.446.2400
   Facsimile: 832.446.2424
5  Email: dcabello@counselip.com

6  David R. Shaub, Esq. (CA State Bar No. 032322)
   Lisbeth Bosshart Merrell, Esq. (CA State Bar No. 201822)
7  Cassandra M. Tam, Esq. (CA State Bar No. 270227)
   SHAUB & WILLIAMS LLP
8  12121 Wilshire Boulevard, Suite 205
   Los Angeles, CA 90025
9  310-826-6678, 310-826-8042 (facsimile)
   lawfirm@sw-law.com

10 Attorneys for Defendant XYCARB CERAMICS, INC.

11                 **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13                  **SAN FRANCISCO DIVISION**

14

15 LAM RESEARCH CORPORATION,                Case No.: 3:03-cv-1335 EMC

16              Plaintiff,                  **XYCARB CERAMICS, INC.'S MOTION
                                            TO BIFURCATE DAMAGES AND
17      vs.                                 LIABILITY**

18 SCHUNK SEMICONDUCTOR and                 Judge:  The Hon. Edward M. Chen
   XYCARB CERAMICS,                         Date:   August 28, 2014
19                                          Time:   1:30 pm
              Defendant.                    Court:  Courtroom 5, 17th Floor
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........................................................................ 1

STATEMENT OF ISSUE TO BE DECIDED ............................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.   INTRODUCTION ................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................ 3

   A.   Lam's Electrode Assembly ........................................................................ 3

   B.   Claim Construction of the RE'266/'456 patent ..................................... 5

   C.   Plaintiff's Demand for Discovery To Support Its Damages Allegations ................... 6

   D.   Procedural Context ..................................................................................... 8

III. ARGUMENT .......................................................................................................... 8

   A.   The Court Has Broad Discretion to Bifurcate the Issues of Liability and Damages To Conserve Party Resources and Serve The Interests of Judicial Economy ................... 8

   B.   Bifurcation of Liability from Damages is Appropriate Where Trial of the Damages Issues Will be Substantially More Complex and Burdensome Than Trial of Liability . 11

   C.   A Trial on Liability May Eliminate the Need to Hold a Damages Trial ................. 19

   D.   Bifurcation of Liability from Damages is Appropriate Where Proof of Liability and Damages is Wholly Unrelated ................................................................. 22

   E.   Bifurcation Will Not Result in Prejudice ............................................... 24

IV.  CONCLUSION ...................................................................................................... 25

1

**TABLE OF AUTHORITIES**

2

Cases:                                                                    Page #

3

*Amsted Indus. Inc. v. Nat'l Castings, Inc.*, No. 88 C 924, 1990 U.S. Dist. LEXIS 8553, at *4-7

4

(N.D.Ill. July 11, 1990)................................................................................... 20

5

*Amylin Pharms. Inc. v. Regents of Univ. of Minn.*, No. 96-cv-2061, 1998 U.S. Dist. LEXIS 5651,

6

at *4-5 (S.D. Cal. Jan. 13, 1998)........................................................................ 12

7

*Amylin Pharms., Inc. v. Regents of Univ. of Minn.*, No. 96-2061, 1998 U.S. Dist. LEXIS 5651

8

(S.D. Cal. Jan. 13, 1998)................................................................................. 11

9

*Aptargroup, Inc. v. Owens-Illinois, Inc.*, No. 02 C 5058, 2003 U.S. Dist. LEXIS 11475, at *2 (N.D.

10

Ill. July 1, 2003).......................................................................................... 20

11

*Bates v. United Parcel Service*, 204 F.R.D. 440, 449 (N.D. Cal. 2001) ........................................ 22

12

*Brown v. Toscano*, 630 F. Supp. 2d 1342 (D. Fla. 2008) ........................................................ 10

13

*Calmar, Inc. v. Emson Research, Inc.*, 850 F. Supp. 861, 866 (C.D. Cal. 1994) ........................... 9

14

*Clark v. I.R.S.*, No. 06-0544, 2009 U.S. Dist. LEXIS 125515, at *4 (D. Haw. Nov. 10, 2009)... 10

*Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 982 (N.D. Cal. 2013).................................... 9

15

*Eaton Corp. v. Auburn Gear, Inc.*, No. F 88-80, 1988 U.S. Dist. LEXIS 15885, 8 U.S.P.Q.2d

16

1373, 1374 (N.D. Ind. 1988)............................................................................ 10

17

*Ellingson Timber Co. v. Great N. R. Co.*, 424 F.2d 497, 499 (9th Cir. 1970) ............................. 21

18

*Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970) ............................ 9

19

*Enzo Life Scis., Inc. v. Digene Corp.*, No. 02-212, 2003 U.S. Dist. LEXIS 10202, at *15 (D. Del.

20

June 10, 2003)............................................................................................ 10

21

*Gaus v. Conair Corp.*, No. 94 Civ. 5693, 2000 U.S. Dist. LEXIS 12918, at *3 (S.D.N.Y. Sept. 7,

22

2000) ...................................................................................................... 12

23

*GEM Acquisitionco, LLC v. Sorenson Group Holdings* ........................................................ 10

24

*General Patent Corp. Int'l v. Hayes Microcomputer Prods.*, No. SA CV 97-429, 1997, U.S. Dist.

25

LEXIS 21342 (D. Cal. 1997) ....................................................................... 11, 19

26

27

ii

28

*Giro Sport Design, Inc. v. Pro-Tec, Inc.*, No. C-88-20228-RPA, 1989 U.S. Dist. LEXIS 9423, at *6-7 (N.D. Cal. Mar. 16, 1989) ........................................................................................ 25

*Graco, Inc. v. PMC Global, Inc.*, No. 08-1304, 2009 U.S. Dist. LEXIS 26845, at *125 (D.N.J. Mar. 31, 2009) ............................................................................................................ 10

*Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) ..................... 11

*Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982) ................................................................. 21

*Innovative Office Prods. v. SpaceCo, Inc.*, No. 05-4037, 2006 U.S. Dist. LEXIS 29439, at *1 (E.D. Pa. May 15, 2006) .................................................................................................. 10, 15

*Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 998 (9th Cir. 2001) ........................................ 9

*Kos Pharms., Inc. v. Barr Labs., Inc.*, 218 F.R.D. 387, 391 (S.D.N.Y. 2003) ...................... 12, 15

Mag Instrument, Inc. v. J. Baxter Brinkmann Int'l Corp., 123 F.R.D. 543, 545 (N.D. Tex. 1988). 22

*Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238 (U.S. 2011).................................................... 17

*Novopharm Ltd. v. Torpharm, Inc.*, 181 F.R.D. 308, 311 (E.D.N.C. 1998)................................... 11

*Pinal Creek Group v. Newmont Mining Corp.*, 218 F.R.D. 652, 654 (D. Ariz. 2003).................... 9

*Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 257 (D.N.J. 1997) 16

*Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000) .................................... passim

*Robert Bosch LLC v. Pylon Mfg. Corp.*, No. 08-542-SLR, 2009 U.S. Dist. LEXIS 76010, at *2 (D. Del. Aug. 26, 2009) ......................................................................................................... 10

*SanDisk Corp. v. STMicroelectronics, Inc.*, No. 04-4379, 2009 U.S. Dist. LEXIS 45931, at *7 (N.D. Cal. 2009).......................................................................................................................... 9

*Siddiqi v. Regents of the Univ. of Cal.* ........................................................................................ 19

*Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 983 (D.Del. 1982) ................................ 15

*Smith v. Alyeska Pipeline Service*, 538 F. Supp. 977, 218 U.S.P.Q. (BNA) 468 (D. Del. 1982), aff'd, 758 F.2d 668 (Fed. Cir. 1984), cert. denied, 471 U.S. 1066, 85 L. Ed. 2d 499, 105 S. Ct. 2142 (1985) ............................................................................................................................... 11

*Swofford v. B & W, Inc.*, 34 F.R.D. 15, 20 (S.D. Tex. 1963)......................................................... 19

*Swofford v. B & W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964) ....................................................... 19

XYCARB MOTION TO BIFURCATE
DAMAGES AND DAMAGES
- Case No.: 3:03-cv-1335 EMC

*White v. E-Loan, Inc.*, No. C 05-02080, 2006 U.S. Dist. LEXIS 76051, at *3 (N.D. Cal. Oct. 5, 2006) ............................................................................................................................... 9

*Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier, Inc.*, No. SA CV 00-549, 2001 U.S. Dist. LEXIS 10738, at *6 (C.D. Cal. May 4, 2001) ............................................. 11, 12, 21

Rules:

8 James W. Moore et al., Moore's Federal Practice § 42.20[6][b] (3d ed. 2010) ........................ 20

Fed. R. Civ. P. 26(c)(4) .............................................................................................................. 9

Fed. R. Civ. P. 42(b) .............................................................................................................. 8, 22

Regulations:

35 U.S. Code §§ 271 and 284 ................................................................................................. 13

iv

**<u>NOTICE OF MOTION AND MOTION</u>**

TO PLAINTIFF LAM RESEARCH CORPORATION.:

PLEASE TAKE NOTICE THAT ON August 28, 2014 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5, 17th Floor of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, California, Defendant Xycarb Ceramics, Inc. ("Xycarb") will, and hereby does, move this Court for an order, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, for a bifurcation of issues of liability from issues of damages and willfulness in this case for judicial economy, efficiency and convenience to the parties. This Motion to Bifurcate is based upon this Notice, the accompanying Memorandum of Points and Authorities, the pleadings and records on file in this action, and such additional argument and evidence, both written and oral, as may be presented in connection with the hearing of this matter.

**<u>STATEMENT OF ISSUE TO BE DECIDED</u>**

Whether granting a separate trial on damages and willfulness, and postponing expert disclosures and expert discovery until after a trial on liability, will promote judicial economy and convenience to the parties where: (1) the damages and willfulness issues are substantially more complex and burdensome than the liability issues; (2) the outcome of a liability trial may eliminate the need for a damages trial; (3) the damages and willfulness issues are wholly unrelated and share no factual overlap; and (4) neither party would suffer unfair prejudice by having the Court try liability first.

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

**I.   INTRODUCTION**

By no means is this a typical patent case.  Over the past eleven years, the parties have been litigating a case involving a patent that has endured a reissue and three reexamination

requests; an alleged infringer that at no time has manufactured the accused product; a completely separate foreign manufacturing company that is neither a named defendant nor has any ownership in the accused defendant; and damages allegations that encompass a non-asserted patent and lost sales after the patent already expired four years ago.  Although this suit was initiated in 2003, it continues to be plagued by complex and unresolved issues of liability related to methods of bonding, chemical composition, and thermal changes – material science concepts not easily understood by juries.  These liability issues are further compounded by the substantially increased complexity and burden of litigating lost profits with price erosion for an asserted and unasserted patent, as well as lost profits for the expired period of the patent-in-suit. The issue of liability, including infringement and invalidity, and the issue of damages are complex matters that are likely to confuse the jury on their own.  However, adjudicating the complex liability issues, together with the even more complex damages issues, in one lengthy trial would likely overwhelm the jury and prejudice both parties.  Bifurcating the issues of liability and damages will conserve substantial resources for the parties and the Court by allowing the parties to focus on the issue of liability, which would be dispositive of the case.

Bifurcation is also appropriate in this unique case since liability is likely to be resolved by a finding of noninfringment by Xycarb, thereby eliminating the need to hold a damages trial. Lam has admitted that the Court's construction of "bonding" in the patent-in-suit, as encompassing or not encompassing "shrink-fit," was the "primary issue with respect to liability in this case."  [Dkt. 272, Lam Opening Claim Const. Brief p. 7.]  Under a fair adjudication of liability by a jury that is not overwhelmed by the complexities of the facts, Xycarb is likely to prevail on its non–infringement defense.  Accordingly, bifurcation is warranted to avoid burdensome, expensive and possibly unnecessary expert discovery and trial proceedings regarding damages.

Furthermore, bifurcation is appropriate since none of the facts or evidence to prove

liability overlap with the facts or evidence to prove damages, including willfulness.  In patent cases, and especially in this case, the evidence necessary to prove liability is distinct and separate from the evidence necessary to prove damages and willfulness.  The liability issues turn on the structure, composition and manufacturing steps of Lam and Xycarb's electrodes, while the calculation of damages relates to sales and the due diligence of Xycarb and sales allegedly lost by Lam, price erosion allegedly suffered by Lam because of Xycarb's sales and the tenuous "accelerated market reentry" theory advanced by Lam in an effort to recover damages beyond the term of the patent.

The Court has discretion to grant bifurcation, and all the factors in this particular case weigh strongly in favor of exercising that discretion here and, in addition, to extending the deadline for expert discovery regarding damages until after liability is adjudicated.  As discussed below, doing so will not only facilitate conservation of party resources and serve the interests of judicial economy, but also promote potential settlement of the case.

## II.  FACTUAL BACKGROUND

### A.  Lam's Electrode Assembly

Lam filed for a patent for its electrode assembly on September 18, 1990, which issued on December 24, 1991 as U.S Patent No. 5,074,456 ("the '456 patent") and reissued as US RE41,266 ("the RE'266 patent" or "the patent-in-suit") (collectively, "the RE'266/'456 patent"). The patent-in-suit teaches an upper electrode assembly that is designed and manufactured to fit in certain Lam plasma etch reactors as part of Lam's semiconductor wafer fabrication systems. [Dkt. 17 p. 2.]

Beginning in 1995, Lam provided International Business Machines Corporation ("IBM") with plasma etch reactors that included the upper electrode disclosed in the '456 Patent, which required periodic replacement due to wear [Dkt. 16 ¶ 7.]  Lam also supplied IBM with replacement electrodes embodied by its '456 patent for such etch reactors.  [*Id*.]  However, due

3        XYCARB MOTION TO BIFURCATE
         DAMAGES AND DAMAGES
         - Case No.: 3:03-cv-1335 EMC

to significant problems with delamination or separating of Lam's electrodes, IBM contacted Xycarb Ceramics B.V. in the Netherlands to request an improved version of Lam's upper electrode.  [Dkt. 34 ¶ 28.]  Accordingly, Xycarb Ceramics B.V. designed and manufactured an improved shrink-fit electrode (the "Xycarb Electrode"), which was commercially available and used as an alternative for the defective Lam electrode by IBM in 2003.  [Dkt. 16 ¶ 3-5.]  At all times during the pendency of this action, the Xycarb Electrode has been manufactured by Xycarb Ceramics B.V. and imported into and sold in the United States through Xycarb Ceramics Inc., the only named defendant in the suit.[1]

Lam filed suit against Xycarb for alleged infringement of the '456 patent on March 27, 2003 [Dkt. 1] and immediately filed an application for a temporary restraining order shortly thereafter on June 19, 2003 [Dkt. 15.]  The basis of Lam's TRO alleged that the electrode plate and support ring of Xycarb's electrode are integrated through a "chemical bond (i.e. such as the use of an epoxy adhesive)" such as the "epoxy acrylate material" found between the plate and ring, through a "mechanical bond" such as shrink-fit, or a combination of both.  [Dkt. 15 pp. 3, 5.]  Xycarb asserted, and continues to assert, that its electrode assembly is manufactured and assembled using a mechanical "shrink-fitting" clamping method.

A reissue patent, three reexaminations challenging the validity of the patent-in-suit, two claim construction hearings, two motions for reconsideration of the Court's claim construction orders, two stays in the litigation pending determination of the patent-at-issue at the U.S. Patent Office, and eleven years later, the parties are still disputing infringement of the RE'266/'456 patent.  Lam alleges that Schunk Semiconductor and Xycarb Ceramics, Inc. have infringed one or more of the claims of the RE'266/'456 patent by their manufacture, use, sale, importation and/or offer to sell their electrodes in the United States, and by knowingly contributing to and

---

[1] "Schunk Semiconductor" is not an entity, but is a trademark once used and long abandoned by Xycarb.

1   inducing others to manufacture, use, sell, import and/or offer to sell electrodes that embody the

2   claimed invention of the RE'266/'456 patent.

3               **B.  Claim Construction of the RE'266/'456 patent**

4           Although Xycarb Ceramics B.V. was aware of the '456 patent during development of the

5   Xycarb Electrode, Xycarb asserts that it believed, and continues to believe, that the

6   manufacturing processes for  its electrode differs from the electrode claimed by the '456 patent

7   as reissued.  The primary issue in this litigation is whether the Xycarb Electrode is manufactured

8   using the teachings of the RE'266/'456 patent, specifically whether the electrode plate and

9   support ring of the Xycarb Electrode are "bonded" using the bonding techniques claimed in the

10  patent-in-suit, or whether the plate and support ring are attached using a mechanical "shrink-

11  fitting" clamping method that was well known in the engineering field.

12          A claim construction hearing was held on February 24, 2014, and the Court issued its

13  claim construction order on April 7, 2014 ("Markman Order").  [Dkt. 306.]  The Court construed

14  the claim term "bonding" favorably to Xycarb, excluding mechanical clamping by shrink-fit

15  from the claim scope of the RE'266 patent.  As a result, the only remaining issue of infringement

16  is Lam's allegation that the electrode plate and support ring of Xycarb's Electrode are integrated

17  through a chemical or adhesive bond as disclosed by the RE'266/'456 patent, which was

18  confirmed by Lam during the status conference hearing held on April 15, 2014.  [Tam Decl. ¶ 2.]

19  At the hearing, Xycarb refuted Lam's allegation by explaining that Xycarb's electrode contains a

20  non-adhesive graphite slurry between the electrode plate and support ring.  [*Id*. at 2.]  In order to

21  prevent contamination into the reactor by the slurry during operation of the electrode, a small

22  bead of an epoxy acrylate material is added as a seal to the inside perimeter of the electrode plate

23  and support ring after they have already been integrated through shrink-fit.  [*Id*.]

24          On April 28, 2014, Lam sought reconsideration of the Court's Markman Order, but its

25  motion for leave to file the motion for reconsideration was denied.

26

27                                          5        XYCARB MOTION TO BIFURCATE
                                                     DAMAGES AND DAMAGES
28                                                   - Case No.: 3:03-cv-1335 EMC

Opening expert reports are due on August 28, 2015 with an expert discovery cut-off of October 9, 2014, and the case has been set for trial on March 2, 2015.

### C.  Plaintiff's Demand for Discovery To Support Its Damages Allegations

Following the Court's denial of Lam's motion for leave to file a motion for reconsideration of the Markman Order, Lam has aggressively sought discovery from Xycarb to support its damages allegations.  Lam's written discovery requests include four additional sets requests for production of documents, one additional set of interrogatories and one additional set of request for admissions.  [Tam Decl. ¶ 3.]  These requests have included:

> (1)  DOCUMENTS sufficient to reveal the number of all XYCARB ELECTRODE ASSEMBLY products imported into the United States by XYCARB, for each month since December 24, 1991, including but not limited to spreadsheets, summaries, reports, memoranda, statements of account, invoices, and other accounting records.
>
> (2)  DOCUMENTS sufficient to reveal the dollar amount of all sales by XYCARB of the XYCARB ELECTRODE ASSEMBLY product, within and outside the United States, for each month since December 24, 1991, including but not limited to spreadsheets, summaries, reports, memoranda, statements of account, invoices, and other accounting records.
>
> (3)  DOCUMENTS sufficient to reveal the identity of each person or entity to whom/which XYCARB offered to sell a XYCARB ELECTRODE ASSEMBLY, from the commencement of such activity until the present. For the purposes of this topic the term "offered to sell" includes but is not limited to any indication of a willingness to sell a XYCARB ELECTRODE ASSEMBLY, including by the communication of product information, pricing, marketing materials, and advertising materials.

[*Id*., Ex. 1, Plaintiff's Third Request for Production Nos. 78, 82 & 93, dated April 17, 2014.]  In total, Lam's six additional requests for discovery have encompassed offers to sell, importation, sales, costs of sales, net profits, and royalty amounts – all over a period from December 1991 until 2014; identities of individuals involved with the importation, offering for sale or sale of the Xycarb Electrode; communications regarding sales; calculations of various types of expenses related to sales from 2000 to 2010; Xycarb's defenses to Lam's damages allegations; employee

XYCARB MOTION TO BIFURCATE
                              DAMAGES AND DAMAGES
                              - Case No.: 3:03-cv-1335 EMC

contact info for those involved with the importation, offering for sale or sale of the Xycarb Electrode; financial statements from 2003 until 2014; communications regarding sales; records of sales; pricing; and costs of manufacturing the Xycarb Electrode.  [Tam Decl. ¶ 4; Ex. 1 to Tam Decl., Request Nos. 77-97, 113-122, &135; Ex. 3, Interrogatory Nos. 23-24; and Ex. 4, Request for Admissions Nos. 31-45, 49-52.]  While the parties agreed to preliminarily produce spreadsheets with financial information created for this litigation and provide the supporting financial documents available upon request by the other party, Lam has demanded that Xycarb provide supporting financial documents that span over 20 years.  [Tam Decl. ¶ 5; *see* Ex. 1 to Tam Decl., Request Nos. 78-84, 87-92.]

Furthermore, Lam has served nine additional deposition notices to support its damages allegations, which include four Rule 30(b)(6) deposition notices that seek financial information, the deposition of Xycarb's west coast regional sales manager (Cathryn Ryan), Xycarb's east coast regional sales manager (Brent Kern), Xycarb's managing director for sales in the U.S. (John Neff), a Rule 30(b)(6) deposition of IBM, and the deposition of IBM's purchasing executive (Ron Firkey).  [Tam Decl. ¶ 6.]  The deposition of Ms. Ryan was taken on June 20, 2014 and two of Xycarb's 30(b)(6) designees on July 14-15, 2014.  [*Id*.]  The remaining pending depositions to be taken by Lam are scheduled to take place the latter part of August.  [*Id*.]

In turn, to refute Lam's allegations of damages, Xycarb has had to serve six additional deposition notices, which include a Rule 30(b)(6) deposition of Lam that seeks financial information, Lam's CEO (Martin Anstice), Lam's former Chief Financial Officer (Ernest Maddock), Lam's Spares Account Manager (Mike Driscoll), Lam's Director of Global Financial Processes (Erik Goodman), and Lam's former Business Unit Manager (James Goodrich).  [Tam Decl. ¶ 7.]  Xycarb also had to notice eight other depositions strictly regarding the issue of liability and not on alleged damages.  [*Id*.]  The depositions are scheduled to occur at the end of July and beginning of August.  [*Id*.]

XYCARB MOTION TO BIFURCATE
DAMAGES AND DAMAGES
- Case No.: 3:03-cv-1335 EMC

1    With regard to expert discovery, both parties will need to prepare and serve opening

2    expert reports on damages on August 28, 2014 and serve expert rebuttal reports on September

3    18, 2014.  The non-expert discovery cut-off date is set for August 28, 2014.

4    **D.  Procedural Context**

5    Xycarb brings this motion to bifurcate the issues of liability from damages and

6    willfulness and to extend the deadline for expert disclosures and expert depositions until after

7    liability is adjudicated.  The Court's Civil Pretrial Instructions, dated January 16, 2013, indicates

8    that bifurcation or separate trial of issues should be raised in the parties' joint pretrial conference

9    statement and filed with the Court twenty-one days prior to the final pretrial conference.

10   [Pretrial Instructions ¶ B(5)(d).]  The Pretrial Conference is currently scheduled for February 3,

11   2015. [Dk. 309 p. 1.]  However, Xycarb brings this motion far in advance of the deadline

12   prescribed for bifurcating issues at trial because, due to the complexity of the damages

13   allegations involved, the parties would save a significant amount of resources by not engaging in

14   expert discovery until after the Court has tried liability.

15   Xycarb raised the issue of bifurcation, specifically as it relates to willfulness, with Lam

16   on February 7, 2014, and Lam stated that such a motion would be contested.  [Tam Decl. ¶ 8.]

17   Lam further raised the issue of bifurcation on July 15, 2014.  Lam has indicated that it opposes

18   bifurcation.  [Cabello Decl. ¶ 2.] Lam raised no concerns regarding the possibility of unfair

19   prejudice if bifurcation were granted.  [*Id.*]

20   **III. ARGUMENT**

21   **A.  The Court Has Broad Discretion to Bifurcate the Issues of Liability and**
     **Damages To Conserve Party Resources and Serve The Interests of Judicial**
22   **Economy**

23   Federal Rule of Civil Procedure 42(b) permits district courts to order a separate trial of

24   any issues "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P.

25

26

27                          8    XYCARB MOTION TO BIFURCATE
                                  DAMAGES AND DAMAGES
28                                - Case No.: 3:03-cv-1335 EMC

42(b).  The decision to bifurcate is committed to the sound discretion of the Court.  *Jinro Am.*

*Inc. v. Secure Invs., Inc*., 266 F.3d 993, 998 (9th Cir. 2001) ("district court has broad discretion

to bifurcate a trial to permit deferral of costly and possibly unnecessary proceedings"); *Craigslist*

*Inc. v. 3Taps Inc*., 942 F. Supp. 2d 962, 982 (N.D. Cal. 2013) ("One permissible reason to

bifurcate is to defer costly discovery on one issue until another potentially dispositive issue has

been resolved." (citing *Ellingson Timber Co. v. Great N. Ry. Co*., 424 F.2d 497, 499 (9th Cir.

1970)).  "Only one of Rule 42(b)'s requirements must be satisfied for the court to bifurcate a

trial." *Pinal Creek Group v. Newmont Mining Corp*., 218 F.R.D. 652, 654 (D. Ariz. 2003), rev'd

on other grounds, 523 F.3d 924, 927 (9th Cir. 2008).  Factors to be considered when deciding

whether to bifurcate a trial include: (1) the complexity of issues and risk of jury confusion; (2)

the possibility that the first trial may be dispositive of the case; (3) the separability of the issues

and the factual proof; (4) the chance that separation will lead to economy in discovery; and (5)

the absence of prejudice to either party.  *SanDisk Corp. v. STMicroelectronics, Inc*., No. 04-

4379, 2009 U.S. Dist. LEXIS 45931, at *7 (N.D. Cal. 2009)(citing *Calmar, Inc. v. Emson*

*Research, Inc*., 850 F. Supp. 861, 866 (C.D. Cal. 1994)).

Furthermore, "[u]nder Rule 42(b), it is implicit that the Court also has the power to stay

discovery on the bifurcated issues." *White v. E-Loan, Inc*., No. C 05-02080, 2006 U.S. Dist.

LEXIS 76051, at *3 (N.D. Cal. Oct. 5, 2006).  Motions to stay discovery may be granted upon

showing of good cause by the moving party or where "justice requires to protect a party or

person from annoyance, embarrassment, oppression, or undue burden or expense." *Id*. at 4-5

(citing Fed. R. Civ. P. 26(c)(4); GTE Wireless, Inc. v. Qualcomm, Inc., 192 F.R.D. 284, 285-86.

(S.D. Cal. 2000)).

XYCARB MOTION TO BIFURCATE
                                          DAMAGES AND DAMAGES
                                          - Case No.: 3:03-cv-1335 EMC

### 1. Bifurcation is Practical in Patent Cases

"[C]ourts have generally been more willing to bifurcate patent trials than other types of cases." *Graco, Inc. v. PMC Global, Inc.*, No. 08-1304, 2009 U.S. Dist. LEXIS 26845, at *125 (D.N.J. Mar. 31, 2009)(quoting *Innovative Office Prods. v. SpaceCo, Inc.*, No. 05-4037, 2006 U.S. Dist. LEXIS 29439, at *1 (E.D. Pa. May 15, 2006)); *Brown v. Toscano*, 630 F. Supp. 2d 1342 (D. Fla. 2008); *see also Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000). In the context of patent cases, "experienced judges use bifurcation and trifurcation both to simplify the issues in patent cases and to maintain manageability of the volume and complexity of the evidence presented to a jury." *Enzo Life Scis., Inc. v. Digene Corp.*, No. 02-212, 2003 U.S. Dist. LEXIS 10202, at *15 (D. Del. June 10, 2003)(citing Thomas L. Creel & Robert P. Taylor, Bifurcation, Trifurcation, Opinions of Counsel, Privilege and Prejudice, 424 PLI/Pat 823, 826 (1995)). "The separation of the liability and damages issues in patent cases is firmly grounded in the case law, undoubtedly due to the complexity of such cases, the lack of any substantial community among the issues, and the hazard that a lengthy and expensive trial on the damages issue will be erased by reversal of the patent owner's judgment on appeal." *Eaton Corp. v. Auburn Gear, Inc.*, No. F 88-80, 1988 U.S. Dist. LEXIS 15885, 8 U.S.P.Q.2d 1373, 1374 (N.D. Ind. 1988).

At least one court has held that "bifurcation is appropriate, if not necessary, in all but exceptional patent cases." *Robert Bosch LLC v. Pylon Mfg. Corp.*, No. 08-542-SLR, 2009 U.S. Dist. LEXIS 76010, at *2 (D. Del. Aug. 26, 2009). Yet, district courts remain divided as to the general applicability of bifurcation to various issues. In *GEM Acquisitionco, LLC v. Sorenson Group Holdings*, a case arising out of breach of contract and related claims, this Court noted that "[b]ifurcation . . . is the exception rather than the rule of normal trial procedure" and cited two non-patent cases to support this proposition. No. C 09-01484, 2010 U.S. Dist. LEXIS 50622, at *7 (N.D. Cal. Apr. 27, 2010)(citing *Clark v. I.R.S.*, No. 06-0544, 2009 U.S. Dist. LEXIS 125515, at *4 (D. Haw. Nov. 10, 2009)(relating to trusts and estates); *Hangarter v. Provident Life & Acc.*

10   XYCARB MOTION TO BIFURCATE
DAMAGES AND DAMAGES
- Case No.: 3:03-cv-1335 EMC

*Ins. Co*., 373 F.3d 998, 1021 (9th Cir. 2004)(relating to violation of the Unfair Competition Act and breach of contract)).  This Court distinguished, however, that, "[p]atent cases often present unique difficulties in calculating damages that are not necessarily applicable to other types of cases."  *Id*. at *7-8 (citing *Novopharm Ltd. v. Torpharm, Inc*., 181 F.R.D. 308, 311 (E.D.N.C. 1998)("Patent cases are often uniquely amenable to bifurcation because of the complex nature of the damages determination and the extensive discovery that is often necessary to prove the nature and extent of those damages.")).

The complexity of patent cases warranting bifurcation has been echoed by other courts as well.  *See* Enzo Life Scis., Inc., 2003 U.S. Dist. LEXIS at *13-18; *Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier Inc*., No. 00-549, 2001 U.S. Dist. LEXIS 10738, 2001 WL 501354, at * (C.D. Cal. May 4, 2001); *Novopharm Ltd. v. Torpharm, Inc*., 181 F.R.D. 308 (E.D.N.C. 1998); *General Patent Corp. Int'l v. Hayes Microcomputer Prods*., No. SA CV 97-429, 1997, U.S. Dist. LEXIS 21342 (D. Cal. 1997); *Amylin Pharms., Inc. v. Regents of Univ. of Minn*., No. 96-2061, 1998 U.S. Dist. LEXIS 5651 (S.D. Cal. Jan. 13, 1998); *Smith v. Alyeska Pipeline Service*, 538 F. Supp. 977, 218 U.S.P.Q. (BNA) 468 (D. Del. 1982), aff'd, 758 F.2d 668 (Fed. Cir. 1984), cert. denied, 471 U.S. 1066, 85 L. Ed. 2d 499, 105 S. Ct. 2142 (1985).

Accordingly, this Court should grant Xycarb's Motion because, due to the unique facts of this patent case, the damages issues are uniquely complex and likely to confuse the jury, an adjudication on liability may resolve the need to adjudicate damages, and the issues related to liability and damages are separate and distinct.

### B. Bifurcation of Liability from Damages is Appropriate Where Trial of the Damages Issues Will be Substantially More Complex and Burdensome Than Trial of Liability

Due to the recent overwhelming number of discovery requests and deposition notices required to assert and defend against Lam's damages allegations, it is clear from the onset that adjudication of damages in this case will be significantly more onerous than adjudication of the

liability issues.  The factual complexities underlying the question of damages before and ***after*** the patent expired provide a compelling reason to bifurcate damages in this case.  *See Amylin Pharms. Inc. v. Regents of Univ. of Minn*., No. 96-cv-2061, 1998 U.S. Dist. LEXIS 5651, at *4-5 (S.D. Cal. Jan. 13, 1998) (where damages issues are complex and damages discovery voluminous and time consuming, bifurcation is proper); *Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier*, No. SA CV 00-549, 2001 U.S. Dist. LEXIS 10738, at *6 (C.D. Cal. May 4, 2001) (granting bifurcation of "reasonable royalty" calculation given complexity of damages analysis under *Georgia-Pacific* factors); *Gaus v. Conair Corp*., No. 94 Civ. 5693, 2000 U.S. Dist. LEXIS 12918, at *3 (S.D.N.Y. Sept. 7, 2000) (noting that it is often appropriate to bifurcate patent cases because damages are sometimes complex and unrelated to issues of liability); *Novopharm Ltd*., 181 F.R.D. at 311 (judicial economy served by bifurcation because damages considerations "could be complex, involved, and time-consuming" compared to liability issues); *Kos Pharms., Inc. v. Barr Labs., Inc*., 218 F.R.D. 387, 391 (S.D.N.Y. 2003)(noting that damages is a complication that generally raises sufficiently independent issues to support bifurcation).

Since, in turn, the liability issues are less onerous, party resources are more conserved and the interests of judicial economy are more adequately met if the issues of liability are bifurcated from the issues of damages and willfulness.

### 2. Lam's Expired Patent and Unasserted Patents Make Calculating Damages Difficult, Burdensome and Likely to Confuse the Jury

Pending a finding of infringement, Lam is seeking recovery of damages in the form of lost profits together with price erosion allegedly suffered because it was required to sell electrodes in competition with Xycarb.  While these issues seem typical of routine patent damages that most juries are faced with adjudicating, the damages issues are further compounded by the fact that the patent-in-suit expired in 2010.  Accordingly, Lam also seeks compensation for lost sales of its electrode after the patent's expiration based on Xycarb's alleged entry into the

market at a level accelerated by its alleged earlier infringement (otherwise known as "accelerated market reentry" damages).  Due to the ongoing litigation for the past eleven years since Lam's application for a temporary restraining order in 2003, which was rendered moot after the case was stayed for six years, this will not be an easy feat by Lam since eleven years of sales of the Xycarb Electrode continued to accumulate.  This, in itself, will require laboring over fourteen years of financial information of each party.  [Tam Decl. ¶ 9.]

Calculating the alleged lost profits prior to the RE'266 patent's expiration will be difficult enough, but determining the anticipated lost profits due to Xycarb's alleged head-start advantage will require extensive expert investigation and testimony.  The distinctive facts of this case make this task even more difficult since this is not a situation where Lam can assert a one-for-one lost profit of its electrode.  Lam's patent-in-dispute simply covers its electrode assembly and not the plasma etch reactor for which it is specifically designed.  Therefore, the sales of Xycarb's Electrode versus the lost profits of Lam's electrode as disclosed in the RE'266 patent cannot be analyzed in a vacuum.  Lam also faced competition from other manufacturers that supplied plasma etch equipment to the semiconductor industry, including Applied Materials, Tokyo Electron, Hitachi, SPTS Technologies and AMFE Inc.  Due to normal wear of electrodes during operation, customers of each supplier are required to obtain replacement electrodes for their specific brand of plasma etch reactor.  Since electrodes are designed and manufactured for a specific supplier's plasma etch equipment, a replacement electrode for Lam Research plasma etching equipment will not physically fit in Hitachi plasma etching equipment.  As a substitute, but not a copy, of Lam's electrode, Xycarb's Electrode may have displaced some of Lam's customers in purchasing replacement electrodes encompassed by the patent-in-suit.  However, it cannot be readily determined through a one-to-one ratio whether Lam customers chose to invest in Xycarb's Electrode or to invest in completely different plasma etch equipment offered by another supplier who may have offered a more cost-effective reactor and/or supplied more stable

XYCARB MOTION TO BIFURCATE
DAMAGES AND DAMAGES
- Case No.: 3:03-cv-1335 EMC

electrodes that did not fail during operation.  In the alternative, Lam's recovery of lost profits may be offset by the possibility that Xycarb's sale of its electrode as a replacement to Lam's plasma etching equipment enabled Lam to maintain sales of its plasma etching equipment, even when customers found Lam's electrode to be unacceptable.

Adding to the complexity and speculative nature of the damages sought by Lam are the dynamics of the marketplace – with 300mm wafer fabrication facilities displacing 250mm wafer fabrication facilities.  Clearly Xycarb's 250mm electrode only competed with Lam's 250mm patented electrode but Lam's own 300mm plasma etcher and accompanying 300mm electrode competed and served to displace Lam's 250mm plasmas etcher and 250mm electrode. Moreover, the semiconductor industry experienced a significant market depression followed by a significant reduction of semiconductor manufacturers (Lam's and Xycarb's customers) through merger and acquisition activity.  [*See* Tam Decl. ¶ 10, Ex. 2 [Dkt. 17], Lenz Decl. ¶ 9 ("Although the term of the '456 Patent does not expire until 2010, the actual life of the technology embodied by the patent may be of a shorter duration due to the rapid evolution of technology in the semi-conductor industry and at Lam, in particular").]

Further adding to the distinct complexity of the damages issues, Lam's allegation of lost profits due to lack of sales of its upper electrode covered by the patent-in-suit may also be offset by the sale of Lam's upper electrode covered by Lam's U.S. Patent No. 6,073,577 (the "'577 patent"), which is unasserted in this action.  Lam alleges, however, that it is entitled to additional damages – including price erosion, lost profits and accelerated market entry – arising out of its unasserted '577 patent on the ground that Xycarb's alleged infringement of the patent-in-suit also displaced sales of electrodes covered by the '577 patent.

To complicate matters even more, the accused Xycarb Electrode is not manufactured by Xycarb, but at all times has been manufactured outside the United States by a foreign non-party, Xycarb Ceramics, B.V.  Although Lam is limited to recovering alleged damages resulting from

14      XYCARB MOTION TO BIFURCATE
DAMAGES AND DAMAGES
- Case No.: 3:03-cv-1335 EMC

sales by Xycarb in the United States pursuant to 35 U.S. Code §§ 271 and 284, this has not stopped Lam from requesting documents regarding sales outside the U.S. since 1991 until the present.  [Ex. 1 to Tam. Decl., Plaintiff's Third Request for Production Nos. 82.]

Since Lam also claims allegedly willful infringing behavior by Xycarb, the addition of treble damages renders the parties' damages analyses even more complex.  *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1308 (Fed. Cir. 2013)(finding that "willfulness is a damages issue, not a liability issue"); *Kos Pharms., Inc. v. Barr Labs., Inc*., 218 F.R.D. 387, 390 (S.D.N.Y. 2003)("A determination of willfulness is relevant to damages insofar as it may entitle the prevailing party to seek treble damages.")(citations omitted).  These are all complex questions regarding damages that will require careful and onerous exploration in discovery and at trial.

At this point, supporting documentation for the parties' financial spreadsheets have been requested but not yet produced.  The magnitude of the work involved to gather and sift through this information provided by Xycarb for the purpose of trial, for example, will be especially burdensome for both parties due to Lam's request for supporting documentation dating back twenty-three years.  [Ex. 1 to Tam Decl, Plaintiff's Third Request for Production Nos. 78, 82.] Analyzing a voluminous amount of financial documents related to lost profits and price erosion is not uncommon in patent cases.  It is uncommon and exceptional, however, for a patent case to be litigated for eleven years in connection with eleven years of alleged damages.  Given the exceptionally voluminous amount of documents to be reviewed to resolve damages issues for trial, bifurcation of the damages issues from the liability issues is warranted in this case. *Innovative Office Prods. v. SpaceCo, Inc*., NO. 05-04037, 2006 U.S. Dist. LEXIS 29439, at *3-5 (E.D. Pa. May 15, 2006) (citing *Real v. Bunn-O-Matic Corp*., 195 F.R.D. 618, 621 (N.D. Ill. 2000)); *Smith v. Alyeska Pipeline Serv. Co*., 538 F. Supp. 977, 983 (D.Del. 1982)(ordering separate trials on liability and damages since resolution of the damages issue will require a

15           XYCARB MOTION TO BIFURCATE
             DAMAGES AND DAMAGES
             - Case No.: 3:03-cv-1335 EMC

review of millions of documents and extensive time both during discovery and at trial);

*Novopharm*, 181 F.R.D. at 311 (ordering separate trials on a patent case because "litigating the

complex damages issues would place a heavy burden on the [alleged infringer] to produce

voluminous documents.").

The complexity of the parties' damages evidence and analysis extends to the trier of fact

as well.  Not only will the jury be required to endure testimony and evidence regarding seven

years of financials during the allegedly infringing period, but it will also need to weigh additional

testimony and evidence regarding four years of financials during the post-expiration period.  The

jury will be flooded with accounting facts and conflicting damages theories regarding the two

periods, which it will need to reconcile with theories of lost profits with price erosion and

accelerated market reentry.  A jury will likely be become confused by the various

aforementioned damages issues alone, but presenting them in conjunction with liability issues

will impose undue prejudice on both parties since neither party will be able to adequately present

their case in a digestible manner.   The immensely time-consuming effort required by the

damages issues in this case and substantially increased likelihood of confusion by the jury if the

liability issues were tried at the same time could be avoided if the issues are bifurcated and the

jury finds for Xycarb in the liability portion of the trial. *See Real v. Bunn-O-Matic Corp*., 195

F.R.D. 618, 621 (N.D. Ill. 2000).

### 3.   The Liability Issues Are Focused on the Bonding of Lam and Xycarb's Electrode Assemblies

By comparison, the liability issues in the case are narrower, albeit still likely to cause

confusion to the jury if they are tried together with the damages issues. *See Princeton*

*Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 257 (D.N.J. 1997)(ordering

bifurcation because "[e]ven plaintiff's most simplistic assessment of the underlying technology

and the liability issues in question are likely to be confusing to a jury, unsophisticated in the area

XYCARB MOTION TO BIFURCATE
                                             DAMAGES AND DAMAGES
                                             - Case No.: 3:03-cv-1335 EMC

of intellectual property").  As a result of the Court's most recent Markman Order, the remaining issue of infringement is Lam's allegation that the electrode plate and support ring of Xycarb's Electrode are somehow integrated through a chemical or adhesive bond as disclosed by the RE'266/'456 patent and a continued back-door attempt to somehow capture mechanical shrink-fit within the claims of the patent in direct contravention of this Court's claim construction order. This will require the parties to educate the jury on the semiconductor industry, the relevant technologies and the vital advantages of the Xycarb Electrode over Lam's electrodes, which have erroneously been found to be the same by the naked eye.  [Ex. 2 to Tam Decl., Lenz Decl. ¶ 10 (stating, "Based on my visual inspection of the Xycarb Electrode, it appeared to be identical to the Lam electrode disclosed in the '456 Patent").]  Accordingly, the jury will need to be presented with substantial testimony and evidence regarding Xycarb's shrink-fit technology to understand the limitations of Lam's patent.  To support its claims and defenses, the parties will need to present expert testimony and evidence regarding the manufacturing steps of each electrode, as well as Lam and Xycarb's potential use of epoxy in their respective electrodes. Each party is also likely to present complicated chemical information regarding compositions found in the Lam and Xycarb electrodes and other tests of the electrodes, both of which will likely be difficult for a jury to understand.  [*See id.*, Ex. B to Lenz Decl. (Organic Laboratory Analysis Report).]

Even with an understanding of the underlying semiconductor technologies, issues of liability regarding invalidity are more likely to complicate the issues and confuse the jury even more.  The question of whether Lam's patent is valid is far from straightforward.  Lam's patent-in-suit has survived a reissued and three separate requests for reexamination by three separate entities that sought to challenge its validity.  Although the RE'266 patent remains valid at the PTO, this Court is not bound by the PTO's finding of validity or analyses of previously presented prior art.  *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238 (U.S. 2011).  This

1   Court may still consider Lam's statements and representations before the PTO and independently

2   render the RE'266 patent invalid as anticipated, obvious and/or indefinite under prevailing case

3   law.  As evident during the claim construction proceedings, Lam's prosecution history is

4   muddled with statements regarding its patent-in-suit that are contradictory to those previously

5   made before this Court.[2]  Adding to this complexity, the jury may be forced to reconcile

6   similarly contradictory statements regarding chemical or adhesive bonding made at the PTO and

7   in these proceedings more than a decade ago with statements made during present proceedings

8   since the case resumed at the end of 2013.

9        Issues of infringement and validity almost always arise in patent cases and are routinely

10   tried with damages issues.  However, the issues surrounding the alleged infringement and

11   validity of the asserted patent of this specific case are murky at best.  Xycarb, for example,

12   noticed eight depositions solely regarding issues of liability and not alleged damages, two of

13   which include the named inventors of the patent-in-suit, Raymond L. Degner and Eric H. Lenz.

14   The patent was filed twenty-three years ago in 1991.  Due to the long pendency of the parties'

15   dispute before the PTO and this Court, it is uncommon and gravely complex to litigate such an

16   archaic patent.  It is undeniable that memories have likely faded and evidence has been lost in the

17   shuffle due to twenty years of storage and changes in management by both parties.

18        While the issues of alleged infringement and invalidity are complicated, they are more

19   likely to be resolved in a trial much more quickly than a jury trial on damages.  Bifurcating the

20   trial into liability and damages will not only increase efficiency, but also reduce confusion by the

21   jury.  Trying all of the issues in a single jury trial, by contrast, would require the jury to sit

22

23   _____

24   [2] For example, during the reissue proceedings, Lam expressly disclaimed bonding via "clamping together
     unbonded surfaces by mechanical structure" ("mechanical clamping") and "fastening."  [Dkt. 264,
     Xycarb Motion for Reconsideration pp. 21, 22, 25.]  However, one of Lam's named inventors, Eric H.

25   Lenz, stated the patent-in-suit covers "mechanical bonding" and Lam's former expert, Ab Hashemi, stated
     the patent-in-suit covers "mechanical fastening techniques."  [*Id.* at 20.]

26

27                                18     XYCARB MOTION TO BIFURCATE
                                        DAMAGES AND DAMAGES
28                                      - Case No.: 3:03-cv-1335 EMC

through the presentation of witnesses, testimony, and other evidence regarding complicated

analyses of damages that may be mooted by the resolution of the liability issues.

### C.  A Trial on Liability May Eliminate the Need to Hold a Damages Trial

"Bifurcation is particularly appropriate when resolution of a single claim or issue could

be dispositive of the entire case." *Medtronic Minimed, Inc. v. Animas Corp*., CV 12-04471, 2013

U.S. Dist. LEXIS 90237, at *3 (C.D. Cal. 2013)(citation omitted); *General Patent Corp. Int'l v.*

*Hayes Microcomputer Prods*., No. SA CV 97-429-GLT, 1997 U.S. Dist. LEXIS 21342, at *4-5

(C.D. Cal. Oct. 20, 1997)(citation omitted).  In *General Patent Corp.*, the threshold question of

liability turned on the validity and enforceability of four different patents. The court held that

efficiency dictated that those issues be tried first because the outcome would likely be case

dispositive:

> If the patents are found invalid or unenforceable there will be no need to resolve
> the infringement and damages claims. Conversely, if the patents are found valid
> and enforceable it will likely promote settlement of the action before trial on the
> infringement and damages issues. Thus, it will almost certainly be efficient for
> this court to first address the issues of validity and enforceability before turning to
> the other claims.

*Id*.  Similarly, in *Siddiqi v. Regents of the Univ. of Cal*., this Court bifurcated liability and

damages to increase the chances of avoiding a lengthy damages phase of trial and to promote

settlement.  No. C 99-0790 SI, 2000 U.S. Dist. LEXIS 19930, at *10-11 (N.D. Cal. Sep. 6,

2000); *see also Swofford v. B & W, Inc*., 34 F.R.D. 15, 20 (S.D. Tex. 1963)(ordering bifurcation

of liability and damages, noting "separate trial of the issue of liability may present counsel the

opportunity to obtain final settlement of that issue on appeal without having reached the often

time-consuming and difficult damages question.").

Like here, the issues of infringement and validity are clearly dispositive since their

resolution will be determinative of whether the parties and the Court must engage in a lengthy

and complex damages trial.  If the RE'266 patent is found not infringed by Xycarb or invalid,

19       XYCARB MOTION TO BIFURCATE
DAMAGES AND DAMAGES
- Case No.: 3:03-cv-1335 EMC

there will be no need to resolve Lam's damages claims.  Conversely, if the RE'266 patent is found to be infringed or valid and enforceable, it will likely promote settlement of the action before trial on the damages and willfulness issues.

Weighing in favor of bifurcation is the likelihood that Xycarb will prevail on infringement issues and thus, resolve liability.  *Aptargroup, Inc. v. Owens-Illinois, Inc.*, No. 02 C 5058, 2003 U.S. Dist. LEXIS 11475, at *2 (N.D. Ill. July 1, 2003)(bifurcating the issues of liability and willful infringement partly because plaintiff's liability case had "taken a real hit from [the] court's Markman construction"); see also *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 622 (N.D. Ill. 2000)(in deciding a motion to bifurcate liability from damages and willfulness issues, the court noted, "probability that defendant would prevail on infringement issue" as a factor for consideration)(citing *Amsted Indus. Inc. v. Nat'l Castings, Inc.*, No. 88 C 924, 1990 U.S. Dist. LEXIS 8553, at *4-7 (N.D.Ill. July 11, 1990)(ordering separate trials because the Magistrate's opinion regarding a preliminary injunction found that the plaintiff was unlikely to succeed on the merits at trial and thus, the issue of damages would never be reached)).

Lam admits that, "[t]he meaning of the word 'bonding' in the asserted patents is the primary issue with respect to liability in this case."  [Dkt. 272, Lam Opening Claim Construction Brief p. 7.]  Lam characterizes this primary issue of liability as a matter of whether "bonding" is construed in favor of Lam to include shrink-fit or construed in favor of Xycarb to not include "shrink-fit."  It is clear from the Markman Order that "bonding" was construed in favor of Xycarb since the Court found, "[t]he claims, specification, and extrinsic evidence show that bonding does not include shrink fitting."  [Dkt. 306 p. 17.]  Xycarb recognizes that Lam has asserted an alternate theory of infringement due to alleged chemical or adhesive "bonding" of the electrode plate and support plate by an epoxy acrylate material, which involves complicated issues of contention in its own right, as discussed above.  However, in light of the Court's Markman Order, it is likely that Xycarb will prevail on its non–infringement defense since the "primary issue with respect to

liability" has already been decided.  Due to Xycarb's likelihood of success regarding infringement, the parties and the Court will save a significant time and efforts from engaging in an extensive damages trial.  *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982) (noting that bifurcation was appropriate where the resolution of one issue would negate any reason for presentation of evidence on another).

Courts considering bifurcation have also found that when separate issues involve extensive discovery, judicial economy is served by staying discovery until it becomes clear that discovery on those issues is necessary. *See Ellingson Timber Co. v. Great N. R. Co*., 424 F.2d 497, 499 (9th Cir. 1970) ("One of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues."); *Gen. Patent Corp*., 1997 U.S. Dist. LEXIS 21342, at *9-10 (staying discovery concerning infringement and damages until threshold question of patent validity and enforceability decided at bifurcated trial); *Yamaha Hatsudoki*, 2001 U.S. Dist. LEXIS 10738, at *9-10 (staying discovery concerning damages and willfulness until after liability adjudicated).

While Xycarb is not requesting the Court to stay factual discovery, it is requesting that the Court postpone the deadline for expert disclosures and expert discovery regarding damages until after liability is adjudicated.  By postponing expert discovery on damages, instead, the need for the open exchange of information between the parties will be fairly balanced with and the potentially needless expenditure on costly expert reports and expert depositions on damages before liability is decided.  This is especially concerning since damages-related discovery requires experts to analyze and opine on a much greater volume of documents than required of a expert engaged for liability.

Furthermore, by bifurcating the damages issues, the parties and the Court can focus on liability and avoid potentially unnecessary testimony and disputes regarding damages during the liability trial, especially since Lam's recovery of damages has replaced "bonded" as the most hotly contested issue since the Markman Order.  Together with expert depositions and trial preparation,

21      XYCARB MOTION TO BIFURCATE
DAMAGES AND DAMAGES
- Case No.: 3:03-cv-1335 EMC

bifurcation of the damages issues from the liability issues will potentially result in hundreds of thousands of dollars in savings to each party and many days of trial for the Court and members of the jury.

**D.   Bifurcation of Liability from Damages is Appropriate Where Proof of Liability and Damages is Wholly Unrelated**

Conservation of party resources and the interests of judicial economy may be further served through bifurcation and the potential elimination of a trial on damages since liability can be resolved without having to consult any of the evidence pertaining to damages. *Bates v. United Parcel Service*, 204 F.R.D. 440, 449 (N.D. Cal. 2001), revved on other grounds, 511 F.3d 974 (9th Cir. 2007) (finding that bifurcation is convenient and economical because liability and damages phrases would require presentation of different types of evidence); *Amylin Pharms.*, 1998 U.S. Dist. LEXIS 5651, at *5 (bifurcation favored where "issues regarding liability and damages are separate and distinct from one another"); *see also* 8 James W. Moore et al., Moore's Federal Practice § 42.20[6][b] (3d ed. 2010) ("Cases where liability and damages may be effectively separated often have been held to be proper subjects for bifurcation.").

"In patent cases, the issues of liability are usually not intertwined with those of damages." *Lemelson v. Apple Computer*, No. CV-N-92-665, 1993 U.S. Dist. LEXIS 20128, at *9 (D. Nev. June 4, 1993); *see also Swofford v. B & W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964) (the court could not "think of an instance in a patent action where the damage issue is so interwoven with the other issues that it cannot be submitted to the jury independently of the others. . . ."). Thus, severing the issue of liability from damages and willfulness permits the court to focus on the technical issues of validity and infringement without the inevitable distraction caused by the presentation of extraneous evidence relating to accounting procedures, costs, marketing and sales of products which may or may not be found to infringe, and proof as to what may be considered lost profits. *See id.* (citations omitted); *see also* Mag Instrument, Inc. v. J. Baxter Brinkmann Int'l Corp., 123 F.R.D. 543, 545 (N.D. Tex. 1988).

XYCARB MOTION TO BIFURCATE DAMAGES AND DAMAGES
- Case No.: 3:03-cv-1335 EMC

The evidence bearing on Lam's damages claim, as stated above in Section A, involves a determination of lost profits, price erosion and accelerated market entry through an analysis of sales, expenses, and other accounting information.  With regard to willfulness, the evidence required will involve Xycarb's due diligence in assessing potential infringement of the patent-in-suit, and the objective and subjective indicia of non-infringement and invalidity – all of which augur for a finding of non-willful infringement.  Indeed, Xycarb intends to move for summary judgment of non-willful infringement because the objective factors all point to non-willfullness and because the Court determines as a matter of law whether the objective factors of willfulness have been satisfied before submitting the subjective determination to the fact finder.  By contrast, the evidence bearing on Lam's liability claim is restricted to whether the electrode plate of Xycarb electrode assembly is chemically or adhesively "bonded" to the support ring, which involves an analysis of technical information.  Financial evidence regarding Lam's and Xycarb's electrode shares no factual overlap with the technical evidence of the electrodes.  More specifically, calculations of damages have nothing at all to do with the structure, composition and manufacturing steps of Lam and Xycarb's electrodes.  Further, even if Xycarb's Electrode is found to infringe Lam's electrode, willfulness is not automatically attached if Xycarb was acting under a good-faith belief of noninfringment.  Accordingly, evidence of willfulness for the purpose of damages is also irrelevant to liability.  *Princeton Biochems.*, 180 F.R.D. at 258 ("[a] determination regarding patent infringement … does not require a detailed inquiry into the elements of willful infringement").

Furthermore, Lam and Xycarb are both large companies with separate departments for sales and technology-related research and development.  Lam's first Rule 30(b)(6) notice of deposition of Xycarb, for example, encompassed both liability and damages issues. However, it was necessary for Xycarb to designate two different individuals to address the issues of liability of damages separately.  Similarly, Xycarb has served separate deposition notices for individuals

involved in the technology of Lam's electrode assembly and separate notices for those involved in the sale of them.  Both parties are also likely to engage different liability and damages experts that will opine on such issues separately.  Accordingly, bifurcation is suitable since this case does not require the same fact witnesses and the same experts to testify at both stages of trial.

### E.  Bifurcation Will Not Result in Prejudice

In applying Fed. R. Civ. P. 42(b), the court must balance "two types of prejudices: first, the possible prejudice of jury confusion on complex issues if bifurcation is denied, and second, the prejudice of considerable delay resulting if bifurcation of liability and damages is granted." *BASF Catalysts LLC v. Aristo, Inc.*, No. 2:07-cv-222, 2009 U.S. Dist. LEXIS 16263, at *6-7 (citing *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. at 621).

First, both issues of liability and damages, while factually distinct, are especially complex due to the longstanding pendency of this case.  As a result, the prejudice of jury confusion is almost guaranteed to occur if liability and damages are tried in one, complicated and lengthy trial.

Second, in weighing the potential delay and waste of judicial resources by bifurcating the case as opposed to not bifurcating the case, the facts of this extraordinary case lean in favor of bifurcation.  If the case is not bifurcated and Xycarb wins on liability, inefficiency and wasted resources will be the greatest since the damages and willfulness portions of the trial will be have unnecessary.  But even if Lam wins on liability, there is still inefficiency because the jury will have had to sit through a trial that was significantly longer than necessary to resolve the compounded issues of jury confusion.  Bifurcation, however would avoid these inefficiencies.  If the liability issues are tried first and Xycarb wins, the action will finally be over and significant judicial resources will have been saved by not having to adjudicate damages.  If Lam wins on liability, the trial on damages will be focused and thus, more efficient in resolving jury confusion.  In turn, the parties may want to conserve their resources and avoid litigating damages

by settling the suit if there is a determination of liability in favor of Lam.

Settlement has not occurred in eleven years despite overwhelming and accumulating expenses.  Even when the "primary issue with respect to liability in this case" was resolved through the Court's Markman Order, settlement did not occur.  In fact, following claim construction, both parties shifted their attention to attacking damages and raised multiple issues of discovery with the Court regarding obtaining financial information from one another.  [Dkts. 317, 318, 327.]  Therefore, bifurcation is more likely to promote settlement of the action since the parties will be focused on resolving liability and determining alleged infringement and validity, which are both independently dispositive of the case.

Lastly, document requests regarding damages have already been propounded and depositions regarding damages have already been scheduled, many of which are likely to occur before this Motion is decided.   Accordingly, Xycarb is not proposing a stay of discovery into the damages-related facts, but only an extension of the deadline for exchanging expert reports regarding damages and taking expert depositions regarding damages until after liability is adjudicated.  See *Giro Sport Design, Inc. v. Pro-Tec, Inc*., No. C-88-20228-RPA, 1989 U.S. Dist. LEXIS 9423, at *6-7 (N.D. Cal. Mar. 16, 1989) (finding bifurcation would not cause prejudice despite stay of damages discovery where each party would have access to information relevant to liability at liability portion of trial).  Therefore, any inconvenience to the parties in the delay of such discovery will be more than offset by the resources saved in the event a liability determination will dispose of the litigation.

**IV. CONCLUSION**

For the reasons above, Xycarb respectfully requests this Court grant its motion to bifurcate liability from damages and willfulness, and modify the case schedule to provide that expert disclosures and discovery regarding damages will only occur, if at all, after liability is adjudicated.

XYCARB MOTION TO BIFURCATE
DAMAGES AND DAMAGES
- Case No.: 3:03-cv-1335 EMC

Dated: July 21, 2014                Respectfully submitted,

                                    by:     s/J. David Cabello/_____

                                            Counsel for Defendant,

                                            XYCARB CERAMICS, INC.