UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Joseph C. Spero, Magistrate Judge


LAM RESEARCH CORPORATION,      )
                               )
          Plaintiff,           )
                               )
vs.                            )     No. C 03-1335-EMC
                               )
SCHUNK SEMICONDUCTOR, et al.,  )
                               )
          Defendants.          )
_____)

                                   San Francisco, California
                                   Tuesday, September 16, 2014

 TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
          RECORDING 11:04 - 11:37 = 33 MINUTES

APPEARANCES:

For Plaintiff:
                         Carr & Ferrell, LLP
                         120 Constitution Drive
                         Menlo Park, California  94025
                    BY:  STUART C. CLARK, ESQ.


For Xycarb Ceramics, Inc.:
                         Wong, Cabello, Lutsch,
                         Rutherford & Brucculeri,
                           LLP
                         20333 State Highway 249
                         Suite 600
                         Houston, Texas  77070
                    BY:  JESUS DAVID CABELLO, ESQ.


Transcribed by:          Echo Reporting, Inc.
                         Contracted Court Reporter/
                         Transcriber
                         echoreporting@yahoo.com

*Echo Reporting, Inc.*

2

Tuesday, September 16, 2014                                    11:04 a.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK:  Calling Case Number C-03-1335, Lam Research versus Schunk Semiconductor.  Appearances, please.

MR. CLARK:  Good morning, your Honor.  Stuart Clark appearing for Lam Research Corporation.

THE COURT:  Mr. Clark.

MR. CABELLO:  Good morning, your Honor.  David Cabello with Wong, Cabello appearing for Xycarb Ceramics, Incorporated.

THE COURT:  We've been seeing too much of each other, gentlemen.

MR. CABELLO:  We have, your Honor.

MR. CLARK:  I agree, your Honor.

THE COURT:  Good.  So here's what -- I'm going to go through these things.  137, the Defendants say there isn't anything other than the two electrodes they offered to have you purchase.  So that should be enough.  And I would think it's -- you would have to purchase them.

MR. CLARK:  Your Honor --

THE COURT:  138, they say they don't have any such things.  139 through 141, they're going to produce all those materials at the deposition.  I think that's too late.  You should get those right away.

3

They say they've identified the documents that they've produced that were disclosed in Rule 26.  I'm not really sure why you would want to have Mr. DeCock (phonetic) testify that he doesn't know what the basis for the reference in the invalidity contentions is.

Anyone want to talk about any of that?

MR. CLARK:  Your Honor, please, if I may.  On 137, I agree that -- I asked that the softwares be produced for destructive testing, and then there was an objection to that, so I said I'll buy the ones I want to destructively test.  But there's no reason why they shouldn't still produce the software that they have.

Some of those -- at least the ones that are still being sold that --

THE COURT:  Well, that's what they say.  They've got two, samples of two of these, right?  That's all they've got left.  The others are no longer being sold.  Is that right?

MR. CABELLO:  That's my understanding, your Honor.  Again, we're dealing with BV, and this is a separate independent --

THE COURT:  Yeah.

MR. CABELLO:  We have to deal with the counterparts of BV.

THE COURT:  I know.  I know.  But they're

4

selling -- they're selling through your client too.

MR. CABELLO:  Yes, your Honor.

THE COURT:  So your client is selling those two, right?

MR. CABELLO:  That's correct.  That's my understanding.

MR. CLARK:  But your Honor --

THE COURT:  Yeah.

MR. CABELLO:  Can we address this whole BV issue?

THE COURT:  No, we're not going to address the whole BV issue.  We've done it 100 times.  You're taking their deposition.  You can ask them any question you want at their deposition.  And if it turns out that counsel has been grossly misinformed, then I'll sanction somebody.

MR. CLARK:  Yes.  I understand with respect to this deposition, your Honor, you've dealt with BV.  But with respect to documents generally --

THE COURT:  We're not -- there's no issue on documents generally.  I don't deal with documents generally. And it's not -- I'm not going back through every piece of discovery.  I go through the ones that you actually brought to my attention.

What you actually brought to my attention are the -- are the half a dozen specific requests that I've done here, right?  Have you talked to him about your -- all 142 of your

5

paragraphs and decided whether or not there are any BV documents beyond what he's been produced?

MR. CLARK:  No, your Honor.  But since -- but since July, there's been a regular refusal to produce anything that might be BV, whereas before July, those documents were routinely produced.  So --

THE COURT:  I need to know -- so listen, I need to know -- there are limited numbers of things that I said that BV could be involved in.  And the operation of the accused device and how they are manufactured, et cetera, is one of them.

However, I don't do things in the abstract.  If there's a specific document request for specific documents and he says we won't produce any BV documents from that specific document request, well, then we'll talk about it.  And there's actually one here where he says he's going to produce them.  139 through 141.

MR. CLARK:  Yes, your Honor.  I'm satisfied with that because -- what I was going to ask you to do was to order that they be produced now instead of next week.  And you've done that.  So --

THE COURT:  Well, now is -- in general.  But maybe tomorrow.

MR. CLARK:  Yes.

THE COURT:  But yes.

6

MR. CLARK:  Before the deposition.

THE COURT:  Yeah.  Of course.  But I don't deal with these things in the abstract.  It's got to be as to a specific document.  We're talking about 137, 138 if you want.  137, 138, they say they don't have anything other than what they're willing to produce.

MR. CLARK:  Your Honor, with regard to 138, at the meet and confer, they said they would produce the current filler material.

THE COURT:  Yeah.

MR. CLARK:  And that would be helpful because if we knew the characteristics of the current material, it would indicate the kind of characteristics that this particular assembly would require to be effective.  And it would therefore suggest that they used similar stuff in the past, if not the identical stuff in the past.

So their offer to produce a sample of the current filler materials in the meet and confer should -- they should be ordered to do that because they haven't done that.

THE COURT:  Well, they're willing to do that, right?

MR. CABELLO:  Your Honor, again, we don't have this information.  We have to get it from BV.  That's the reason we were offering to produce it at the deposition. Now, if the Court orders us to produce it before the

7

deposition, we will certainly talk to BV, have them send over the information.  We don't have that information.

So first of all, I need some time to get BV to send it to me before I'm ordered to produce it.  I can't produce it tomorrow.

MR. CLARK:  Your Honor, with regard to that --

THE COURT:  See, I actually don't believe that.

MR. CABELLO:  Well, your Honor --

THE COURT:  The directors of BV are running this litigation.

MR. CABELLO:  Given the time zone difference, your Honor --

THE COURT:  I'm sorry.

MR. CABELLO:  And that happened to me last time, your Honor.  We went outside, and we talked about the BV deposition.  It was after closing time at BV, and before I knew it, Mr. Clark had filed a motion to compel --

THE COURT:  Well, tonight at midnight, you can call them.  It will be 9:00 o'clock in the morning there or approximately 9:00 o'clock in the morning.  And you can tell them, the Judge just ordered the following.

So today, their time tomorrow, they can -- they have to get to you in a UPS overnight box the following materials.  And you tell them what they've got to get.  And they have tomorrow to get it in to UPS.  And then it arrives here on

8

Thursday.  So I'll give you until Thursday.  But I want to figure out exactly what's in that box.

MR. CABELLO:  I would also --

THE COURT:  So first the samples -- the samples of the two electrodes that are currently being sold.  Okay.  You want samples of that.  What do you want them for?

MR. CLARK:  I'll purchase those and --

THE COURT:  You'll purchase those.

MR. CLARK:  We want to break them apart, your Honor, and see --

THE COURT:  Good.  Okay.  So you'll have those shipped over, and he'll pay you $50,000 for -- or whatever the cost is, the invoice cost.  Have them send an invoice with it.

MR. CABELLO:  And your Honor, at the last meet and confer --

THE COURT:  Yeah.

MR. CABELLO:  -- that's precisely what we agreed to.

THE COURT:  Good.  Good.

MR. CABELLO:  And yet Mr. Clark now has waffled on that agreement and comes to the Court asking for further relief.

THE COURT:  No.  I -- I think we shouldn't be here.  I agree with you.

9

MR. CLARK:  Your Honor, I did -- I told them which two parts I wanted at least 10 days ago.

THE COURT:  But then you asked -- you came here with a motion for 32.

MR. CLARK:  I need to look at them to --

THE COURT:  Well, any -- if you've already agreed to something, you don't go back into court and say, now I want 32.

MR. CLARK:  No.  I never weighed that, your Honor. I said I won't destructively pierce anything.  I still want to see it.

THE COURT:  Okay.  And he says there weren't any. He probably told you that at the meet and confer.

MR. CLARK:  I don't believe he did.

MR. CABELLO:  We did, your Honor.

THE COURT:  Of course you did.

MR. CABELLO:  And the issue here is that as the --

THE COURT:  But in any event, it doesn't matter. I'm going to get past all the squabbling.  So one of the things that's going to be in the box is -- or maybe you have them here, actually.

MR. CABELLO:  I do not.

THE COURT:  Because your company -- your client sells them.

MR. CLARK:  Yes, they do, but they special order

10

them from BV.

THE COURT: Okay. So I want two of those, the two current ones in the box for production on Thursday, but he's going to have to tender you payment on Thursday for those. And you're going to have samples of the materials used in the construction in that box, of the current electrodes. That's 138.

MR. CABELLO: And by samples, we're talking about the elastomer that's used and the graphite paste that's used, your Honor?

THE COURT: I don't know. What is -- is that what you're talking about?

MR. CLARK: It is. It's the graphite paste. There are three ingredients, graphite paste, then there's apparently a more liquid form of the graphite paste, and then there's an epoxy that's used as a sealant.

MR. CABELLO: Your Honor, there's an elastomer used. We're not using epoxy. We're using elastomer.

THE COURT: Okay. That's fine. Whatever you're currently using.

MR. CABELLO: And I don't know what the third one is.

THE COURT: He's saying there's two forms of graphite.

MR. CABELLO: I'm not aware of two, your Honor.

11

I'm aware --

THE COURT:  Well, whatever graphite is used to manufacture a sample of that.

MR. CLARK:  Whatever happens to be in there, your Honor.  Whatever they use.

MR. CABELLO:  And your Honor --

THE COURT:  So you just -- you know, you're going to produce it.  You're going to say, these are the things we use.

MR. CABELLO:  And your Honor, without -- without -- I guess -- let me be very clear, your Honor.  The electrodes are manufactured to order.  I hope that BV has them.  If they do not have them in stock, we need to manufacture them to order.

So I make that note.  That's the way that Inc. has run the business with BV.  They order to a specific customer request.  And once they're manufactured, they're shipped, either drop-shipped to the customer or sent to Inc. in Georgetown.

THE COURT:  Well, at this --

MR. CABELLO:  I don't know if they're in stock.

THE COURT:  It's very late in the game to raise that.  If I were you, I would have ordered them manufactured knowing that the judge was eventually going to order them produced, once there was probably months ago a request for

12

them.

So you will be in deep trouble if you don't actually produce them on Thursday.

MR. CABELLO:  We will do everything we can, your Honor.

THE COURT:  No, no.  You're going to produce them on Thursday.  You're going to produce them on Thursday.  I don't -- you know, the notion that somebody asks for samples of these when these were asked for, which is now -- I didn't go back in history, but many months ago, and you're waiting until what amounts to the eve of the end of discovery and the summary judgment period to even think about having them manufactured so that they could be examined, that's bizarre.

MR. CABELLO:  Your Honor, we told Mr. Clark, give us a purchase order.  We will manufacture them to the purchase order.  That was at the meet and confer.  And yet --

THE COURT:  That was last week.

MR. CABELLO:  We haven't seen a purchase order, your Honor.

THE COURT:  Okay.  Okay.  You think that's a good excuse?

MR. CABELLO:  No, your Honor.  I don't think it's a good excuse.  I don't know if they exist in inventory.  I hope they do.

THE COURT:  I hope for your client's sake that they do.

MR. CABELLO:  I'm alerting the Court that they may not exist.

THE COURT:  Yeah.  Well, they better exist in inventory.  I just -- I'm baffled by the idea that you didn't think the moment this case was filed, that you were going to have to produce samples of the accused devices.

MR. CABELLO:  Your Honor, they had samples of the accused devices.  They disassembled them.  They even have an infringement report that was prepared on the basis of those samples.

THE COURT:  It baffles me that you thought you also wouldn't have to produce one of the accused devices.  If to no one else than your own experts.  I mean, it's just -- did you give your experts -- did you give your experts the accused devices to look at?

MR. CABELLO:  To date, they haven't asked for them, your Honor.  And our noninfringement report is not due.  We filed our invalidity report.  Our noninfringement report is not due until sometime in the future.  To my knowledge, they haven't asked for those samples.

THE COURT:  I bet you a nickel they'll want to see them.

MR. CABELLO:  To date, I'm not aware --

14

THE COURT:  Because otherwise, the cross examination is going to be -- you mean you've never seen this device?  You've never done any testing on it?  You've never -- this is bizarre.

Okay.  So the order is, with respect to Number 137 -- Karen, would you take notes on this?

THE CLERK:  Uh-huh.

THE COURT:  With respect to Number 137 to produce samples of the two electrodes that are currently being sold for destructive testing not later than this Thursday, the 18th of September upon payment of the invoice, the retail invoice price for those materials, with respect to 138, the order is to produce samples of the current materials used to construct the two types of electrodes that are currently being manufactured.  Also by Thursday that should be done.

With respect to documents requested 139 through 141, produce those materials and all other documents that are going to be produced pursuant to the 30(b)(6) deposition notice.  So documents responsive to requests 139 through 141 and documents responsive to the 30(b)(6), produce those documents not later than Thursday the 28th.

And I would be inclined to deny the motion for this deposition of Mr. Decock, which I can't understand the point of that.

MR. CABELLO:  Your Honor -- I'd like to raise one

15

thing with the Court, your Honor.

THE COURT:  Yeah.

MR. CABELLO:  This deals with the notice of deposition of BV.  When we were last before this Court, the Court -- based on Mr. Clark's representations that he only needed information with respect to the composition of the adhesive and the composition of the device, the Court ordered the deposition to go forward of BV, and I agreed to provide a witness.

THE COURT:  Uh-huh.

MR. CABELLO:  We had the notice of deposition revised several times to add additional documents -- I'm sorry -- additional topics --

THE COURT:  Topics, yes.

MR. CABELLO:  -- which are outside of the agreement that we reached with this Court.

Secondly, your Honor --

THE COURT:  Well, I don't know that there was an agreement reached with the Court.  I believe there was a Court order.

MR. CABELLO:  And it was specific to the composition of the adhesive and the composition of the device.  I've got the transcript right here, your Honor.

But aside from that --

THE COURT:  Point it out to me in the transcript.

16

You copied it, I assume.

MR. CABELLO:  Yes, your Honor.

THE COURT:  What page is it?

MR. CABELLO:  I'm sorry.  It's page 80 at line 17.

THE COURT:  Okay.  I don't have that.  That would be great.  Show it to me.

Okay.  How does he go beyond that?

MR. CABELLO:  Well, he continues to issue revised notices of deposition where there are additional topics added to it, your Honor.  And we're saying, wait a minute.  Here it's clear no good deed goes unpunished.  We will produce a witness.  We had a clearly defined set of parameters, and now this deposition is growing.

But the second problem that I have, your Honor, with these amended notices of deposition is that the amended notice of deposition as captioned is amended notice of deposition of Xycarb Ceramics, Inc. and/or Ceramics -- Xycarb Ceramics BV.  And then in the notice it goes on and says, Counter-defendant Lam requests Defendant Xycarb Ceramics, Inc. and/or nonparty Xycarb Ceramics BV jointly and severally call Xycarb.

And so we have Lam trying to --

THE COURT:  No, no, no.

MR. CABELLO:  -- couple the two parties together.

THE COURT:  That's clearly improper.  You can't

17

issue a 30(b)(6) to multiple parties.  One of them is a party and one of them is not.  That's clearly improper.  And I didn't order that.  I ordered Xycarb BV to provide you a witness, a 30(b)(6) witness from Xycarb BV.  That's all.

MR. CLARK:  Your Honor, I didn't -- since they were a nonparty, I didn't know quite how I would send a deposition notice to a nonparty.  So that's why --

THE COURT:  Well, I ordered it to occur, so all you had to do was notice it.  But in any event --

MR. CLARK:  Your Honor, I'll delete the reference to Inc. without a problem.  I just didn't --

THE COURT:  Good.

MR. CLARK:  -- know how to deal with it.

THE COURT:  Okay.  The reference to Inc. is deleted.  It's Xycarb BV.

Now, why are you asking -- are there questions on his list that go beyond the composition of the device, which is what we were talking about is what you needed this deposition for?

MR. CABELLO:  Yes, your Honor.  I don't have the one that was served this morning because I didn't have an opportunity to print it, since I was --

THE COURT:  Coming here.

MR. CABELLO:  Yes.  So Item 1, clearly within the parameters.  The manufacturing and composition of the Xycarb

18

electrode assembly.  Item 2, the method included, but not limited to all manufacturing steps by which the Xycarb electrode is fabricated.  Again, within.

The composition -- Item 3, the composition function and characteristics, including but not limited to the adhesive qualities of the filler material referenced on page 57, line 11 of the transcript deposition of Mr. Vanderclusen (phonetic) taken July 18th, 2003.

And then it goes on, the composition --

THE COURT:  Those seem okay so far?

MR. CABELLO:  Yes, your Honor.  Then the composition function -- well, I say yes.  First of all, we've agreed to furnish this material.  It is furnished to us by a third party.  So again, there's only certain information that both BV and Inc. have because this material is provided by a third party.  It's known by a trade name.  So --

THE COURT:  Well, they only have whatever information they have.

MR. CABELLO:  The composition, function and characteristics including, but not limited to the adhesive qualities of any material other than the filler material referenced in the transcript of Mr. Vanderclusen that has at any time been placed in the grove of the electrode plate of the Xycarb electrode assembly in the course of fabrication

19

or has otherwise been used in such fabrication.

THE COURT:  What's wrong with that?

MR. CABELLO:  Well, your Honor, those -- well, first of all, it's overly broad because it's any.  And --

THE COURT:  Okay.  We'll keep it to the past six years.  Does that help you any?  I don't know.  Within the statute of limitations.

MR. CABELLO:  That would be helpful.

THE COURT:  Okay.  So you can only ask questions within the statute of limitations.  Yeah, that's fine.

MR. CABELLO:  And to the extent there's been new topics -- your Honor, I can't address them because, again, I don't have access to that.

THE COURT:  What other topics?

MR. CABELLO:  I don't know what was in his notes.

THE COURT:  So those are the ones -- you've read the -- all the topics from the previous list?

MR. CABELLO:  I might be able to --

THE COURT:  Maybe you've got a copy.  Mr. Clark, do you have a copy of it?

MR. CLARK:  Your Honor, I brought the previous ones.  I did add, I believe, another document request today.  No.  What I did today, I amended, your Honor.  I referred to Docket Number 86, and it was actually Docket Number 116, the reference to the documents to be produced.  But I think your

20

order with respect to producing documents is no longer an issue.

THE COURT:  So this is not -- so you're not -- as far as I'm concerned, with the caveat that it's going to be within the statute of limitations, the topics that counsel has just read are fine.  And I approved them for the 30(b)(6) witness.

Now, do you think there's no -- no other topics beyond that in your amended --

MR. CLARK:  I don't think I added the topic this morning, your Honor.

THE COURT:  Counsel is looking it up.

MR. CABELLO:  There is a fifth topic, your Honor.  And I'm trying to figure out where it fits into because it --

THE COURT:  Maybe it's just an overlap.  Go ahead.

MR. CABELLO:  I'll just read it.  It's the first time I've read it.  The composition, function and characteristics, parens, including, but not limited to adhesive qualities of the materials described in the annotations to Pictures 3, 4 and 5 from the declaration of Mr. Vanderclusen as, quote, internal gap filling, quote, conducted nonmetallic interface, end quote, protective coating.

So again --

21

THE COURT:  That seems to overlap the previous one where you're talking about things -- the filler material.

MR. CABELLO:  And then it's accompanied by a list of documents, your Honor.  If this Court's order is to produce these documents that the Court has articulated, then we'll certainly agree to produce those documents, but --

THE COURT:  It didn't sound like you were objecting to any of the documents produced.

MR. CABELLO:  We're not, your Honor.  I just -- I don't want the scope expanded every day when a new deposition notice is listed.

THE COURT:  No.  Are we done?

MR. CLARK:  I'd like to ask you about the six-year period.  I understand that a claim against BV would -- if we were to set a claim against BV, the limitations period would apply.

THE COURT:  Yeah.

MR. CLARK:  Since this is basically the -- the Inc. -- the substitute for the Inc. deposition that didn't go ahead because they didn't provide a knowledgeable witness -- now, the knowledgeable witness that they didn't provide would have been required to speak to the entire period of infringement.

THE COURT:  No.

MR. CLARK:  So why should BV be limited to --

22

THE COURT:  I don't know.  My question is what you need.  Does it help -- aren't you going to get -- I don't want you to go back 20 years.  It seems pointless.  Fifteen years seems pointless.

MR. CLARK:  2002 is when the infringement started, your Honor.  So if I could go back to 2002.

THE COURT:  2002.  Twelve years.  You need to go back 12 years?

MR. CLARK:  Well, the patent expired in 2010, so we're looking at 2002 to 2010.

THE COURT:  I understand.  But are you really going to use information you discover from 2003?

MR. CLARK:  I think so, your Honor, because it's the components of the accused product.

THE COURT:  During the period of time that you can't sue them for infringement?

MR. CLARK:  We're suing Inc. for that period of infringement.

MR. CABELLO:  They try to bring in BV, your Honor.  Judge Chen said --

THE COURT:  What's the statute of limitations on Inc.?

MR. CABELLO:  That goes back to 2003, when they sued us, your Honor.  Since --

THE COURT:  Fine.  This lawsuit was filed in 2003?

23

MR. CABELLO:  Against Inc., not against BV.

THE COURT:  Fine.  You can go back to -- for the filing date of the lawsuit.  You can go back to the filing date of the lawsuit.  My guess is, there are a limited number of permutations here.  And if you know the one from 2006, you're going to know the one from 2003.

MR. CLARK:  I hope so, your Honor.  I certainly intend to ask that.

MR. CABELLO:  Your Honor, what's really interesting here is that when I've asked Mr. Clark for documents, conception documents dating back to the date of invention, which was 1990, he says, oh, that's too long ago.  Our documents aren't complete.  So --

THE COURT:  Well, I know.  You only have what you have.  And you're all welcome to challenge each other's assertion about what you have, as long as you have evidence on that subject.

But you've asked for documents back to 2003 or back to the conception.  He says, I don't have any.  Okay.  You said you don't have any documents relating to the 30 other devices that were previously sold.  Fine.  I believe you.  Until I see evidence to the contrary, I believe both.

But that's what we're going to do.  You come up with evidence.  The other side has been misleading you or the Court, well, then we'll deal with it.  But so be it.

24

In any event, as to -- so as to the 30(b)(6) deposition, the topics that have been recited in court are fine except for the limitation will be -- it can only be inquired into for the period from the beginning of -- from the filing of this lawsuit forward.

Let's not do this again.  Thank you all.

MR. CABELLO:  Your Honor, before we leave, and given that the Court hasn't realized that Mr. Clark filed another letter this morning --

THE COURT:  Oh, really?

MR. CABELLO:  I wanted, one, to alert the Court of it because I don't want the Court to be surprised when it goes back and finds out there's been yet another letter filed.  Again, I have not seen the letter in its final form because it was filed when I was on the BART train headed up this way.

THE COURT:  What is the issue generally in that letter?

MR. CLARK:  Your Honor, the issue is -- the Heslam (phonetic) deposition, he's the attorney who prosecuted the original patent, in other words, the one that was replaced by the reissue patent.

THE COURT:  Yes.

MR. CLARK:  Last week, the attorney who prosecuted the reissue patent was examined, and he was -- in a lengthy

25

examination, he was asked various things.  He was -- for example, with regard to opinions of matters at issue in this case.

THE COURT:  Who was doing this?

MR. CLARK:  Mr. Cabello took the deposition of Peter Skiff (phonetic).

THE COURT:  Uh-huh.

MR. CLARK:  And the reason, as I understand it, why Mr. Skiff is being deposed, why Mr. Heslam is being deposed this week is the new allegation of inequitable conduct.

THE COURT:  Yeah.

MR. CLARK:  And so obviously, anything that happened with regard to disclosure or nondisclosure or references is fair game.  But the witness was asked to express opinions with regard to a variety of subjects, including what he thought the Patent Appeals Board would have done under certain circumstances, including what -- whether there would be any patentable content left in the patent if the -- if Judge Chen were to make certain findings based on certain hypotheticals.

THE COURT:  I don't -- if what you're asking for is an advanced ruling on questions that might be asked, the answer is, I won't do that.  I only do attorney/client privilege or work product objections on a question-by-

26

question basis.  They ask the question, you raise your objection.  If you can't work it out afterwards, then you come to me.

MR. CABELLO:  Your Honor, if I may.

THE COURT:  Yeah.

MR. CABELLO:  I do have some excerpts of Mr. Skiff's deposition.  What I want --

THE COURT:  Go ahead.

MR. CABELLO:  What I'd like to do is call the attention of the Court to the extreme method of objecting to these questions and the coaching of the witness through the objection, which again -- time and again, your Honor, we've asked Mr. Clark not to engage in these kind of tactics.  And so I'd like for the Court to inspect this.  I have excerpts of the transcript that have been copied onto a piece of paper starting at page 59 -- I'm sorry -- starting at page 58, line 15, down to line -- page 60, line one.

And it's just speaking objection after speaking objection after speaking objection.  Another example is highlighted at page 82, line 14 through page 87, line two. And again, your Honor, this -- I can't conduct a deposition when the deponent is constantly being coached by counsel.

(Pause.)

THE COURT:  Some of them are fine and some of them aren't.  So here's the rules for depositions.  Nobody is

27

allowed to say anything except the following.  Questions, objections.  Objections may only take the form of the one word, colloquial for the objection or the Federal Rule of Evidence citation.

In the case of attorney/client privilege or attorney work product, that can be followed by an instruction not to answer.  That's what you can say in depositions.  Otherwise, it's question, answer, question, answer, question, objection.  Most of these objections are fine.  It's just every once in a while, one or the other attorneys goes in and says, well, I urge you not to form an opinion on that subject.  You can't do that.

MR. CLARK:  I don't think I did, your Honor.

THE COURT:  Well, yes, you did.  There's an objection --

"MR. CLARK:  Objection, incomplete
hypothetical, calls for legal opinion
that this witness is in no position to
give on the fly with having five minutes
or less to consider the implications of
this document.  Mr. Skiff, I would urge
you not to come to an opinion if you
don't feel like you've had sufficient
time" --

You can't say that, Mr. Clark.  That's on page 145.

28

So in any event, I'm taking care of all of that. We're just going to have questions and answers and objections in the traditional form. And since you guys -- usually people get along well enough so that they can have conversations during depositions to clarify things. Obviously you can't. So we're just going to have questions, objections, answers and instructions not to answer in those limited circumstances.

But I don't give advanced rulings on disputes on attorney/client privilege objection questions, especially in such a difficult context. They have to be done on a question-by-question basis. So he can answer your questions. If you think they're improper, intruding into privileged material, work product, then you can instruct not to answer.

MR. CLARK: Very well, your Honor.

THE COURT: Okay. All right. Thank you.

MR. CABELLO: Thank you, your Honor.

MR. CLARK: Thank you, your Honor.

THE CLERK: Court stands in recess.

(Proceedings adjourned at 11:37 a.m.)

29

CERTIFICATE OF TRANSCRIBER


     I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

     I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.


                    Echo Reporting, Inc., Transcriber

                      Wednesday, September 17, 2014